ALVEY *v.* ALVEY et ux.

[No. 32, September Term, 1959.]

*Decided November 17, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*George B. Woelfel,* for appellant.

*Eugene M. Childs,* with whom were *Childs & Bald* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

When the Circuit Court for Anne Arundel County sustained the demurrer of the wife to the amended bill of complaint of a purchaser against the seller of a parcel of land and his wife for specific performance of the memorandum of sale signed by the husband, but not the wife, the purchaser appealed.

The amended bill in substance alleged that R. Bradley Alvey (the seller, husband and one of the defendants) and Pauline Alvey (the wife of the seller and the other defendant) on April 29, 1955, "did agree to convey" to Howerton Alvey (the purchaser and plaintiff) a parcel of land situated in Anne Arundel County, at and for the sum of $2750, of which $2250 was "paid [to] the * * * defendants" as a down payment. The bill further alleged that "even though the contract was executed by * * * [the husband] alone on behalf of the [g]rantors, his wife * * * was well aware of all the facts pertaining to the making of the contract"; that the wife "was present on several occasions when the contract was discussed and was present and took part the day the contract was signed and [that] she counted the money several times"; that the wife stated "she was glad her husband had decided to sell off some of the property and she wholly acquiesced in the sale"; that the plaintiff "has no doubt that if he or his brother [the seller, husband and one of the defendants] had realized it was necessary for * * * [the wife to sign] the agreement, she would have done so"; that the wife "accepted part payment on account of the purchase price"; and that, after considerable delay caused by a dispute with an adjoining owner over a boundary line, the seller finally informed the purchaser that "he would not go through with the deal and advised * * * [him] to get the property the best way he knew how." Lastly, it was alleged that on or about November 7, 1957, the defendants, by and through a trustee, had conveyed the property to him and accepted a reconveyance as tenants by the entireties. The plaintiff, however, sought only specific performance and the usual "further relief."

The husband answered the bill, but the wife demurred—

though she also answered—by saying that the "contract * * * shows on its face that * * * [the wife] was not a signatory party."

The demurrer, of course, had the effect of admitting only such facts as were well pleaded—that the wife had accepted a part of the down payment; that she had acquiesced in the sale; and that although she had knowledge of the sale she accepted a conveyance of the property so sold as one of the tenants by the entirety—and no more. Other alleged circumstances—that the wife was aware of the execution of the agreement to convey; that she was present when the transaction was discussed; that she "took part" on the day the memorandum was signed; that she counted the down payment; and that she was glad her husband had decided to sell —are, factually, impertinent or irrelevant.

The chancellor, in sustaining the demurrer, stated no reason for his action, and, since he had not been requested to file a memorandum of the grounds for his decision pursuant to Maryland Rule 18 c, we can only surmise—since it was the only ground on which the demurrer was rested—that the chancellor based his decision only on the assigned ground that the statute of frauds was a bar to the specific performance of a memorandum of sale the wife had not signed. Whether or not the chancellor also considered the impact of the well pleaded facts on the statutory bar we have no way of knowing. In any event, since it is conceded that the statute, in the absence of facts precluding its operation, would be a complete bar to specific performance on the part of the wife, the question is whether the wife, because of her actions or inactions, is estopped from asserting the bar of the statute as a reason why the demurrer should be sustained.

The plaintiff contends that the wife is equitably estopped from denying that she was a party to the agreement to convey. On the other hand, the defendants contend that on the facts the wife as one of the present owners of the property cannot be shown to have entered into the agreement to convey.

The plaintiff in seeking only specific performance instead of also claiming partial specific performance and attempting

to set aside the "straw" deeds,[1] must show that the wife was a party to the agreement to convey. If the bill has failed to do that, then the wife's demurrer was properly sustained. The plaintiff was, of course, directly confronted with the statutory requirement that the "party to be charged" must have signed the memorandum. Statute of Frauds, 29 Car. II, Ch. 3, § 4 [*Alexander's British Statutes,* p. 689 (Coe's ed. 1912)]; *Green v. Drummond,* 31 Md. 71 (1869). Furthermore, the mere acceptance by the wife of a part of the down payment in and of itself was not sufficient part performance to take the sale out of the statute. *Artz v. Grove,* 21 Md. 456 (1864); 101 A.L.R. 919, 1079. The real question, then, is whether the wife's acquiescence in the sale was sufficient to estop her from asserting the bar of the statute as a reason for sustaining the demurrer. We think not.

Since the marital status of the wife creates no special circumstances with respect to her ability to acquiesce which are not governed by the rules with respect to estoppel by acquiescence or silence generally [26 Am. Jur., *Husband and Wife,* § 32], the immediate inquiry is whether such acquiescence as exists in this case would estop anyone. "Acquiescence or silence has been described as a *quasi*-estoppel," however, it is not such as would cut off the party's title, nor his remedy at law, but simply bars his right to equitable relief, and leaves him to the available legal actions. 3 Pomeroy, *Equity Jurisprudence,* § 817 (5th ed. 1941). It has also been held that mere silence, standing alone, does not generally have the effect of an estoppel. *Mohr v. Universal C.I.T. Corp.,* 216 Md. 197, 140 A. 2d 49 (1958); *Furst v. Carrico,* 167 Md. 465, 175 Atl. 442 (1934). Thus, in the instant case, if the acquiescence alleged is to constitute an estoppel, it must

---

1. After this appeal had reached this Court, the plaintiff sought to recall it so that the bill could be further amended to claim partial specific performance, but when the defendants objected, the motion was denied. The plaintiff also indicated in his oral argument that he now knows he also should have sought to set the deeds aside in this or a separate action. But whether the plaintiff may still do either or both are not questions which are presently before us on this appeal.

be shown that the classical elements necessary to establish an estoppel *in pais* are present. See Pomeroy, *op. cit., supra,* § 805. As we said recently in *Liberty Mut. Ins. Co. v. American Auto Ins. Co.,* 220 Md. 497, 154 A. 2d 826 (1959) the doctrine of equitable estoppel "will not be applied unless it is shown that the person sought to be estopped has been guilty of some wrongful or unconscientious conduct upon which another relied and was misled to his injury."

We think it is clear, from such facts as are shown by the pleadings, that prior to the execution of the memorandum of sale by her husband the wife did not represent or conceal any material facts on which the purchaser was entitled to rely. The husband, at that time, was the sole owner of the property sold and it was with him that the purchaser dealt. Furthermore, since the purchaser knew or should have known of the wife's inchoate right of dower, he should also have gotten her to sign the memorandum of sale. The plaintiff *thought* that the husband was the owner and he *was*, and the wife did not by her silence induce him to believe otherwise. Even though the wife was present and agreed to the sale, she had, at that time, no interest as an owner which she could sell, but had only a dower interest which, of course, she could have released had she been requested or required to do so. Had the wife owned the property with her husband and knowingly remained silent, thereby misleading the purchaser to his detriment, the situation might be different. See *Boehm v. Boehm,* 182 Md. 254, 34 A. 2d 447 (1943). Cf. *Milburn v. Michel,* 137 Md. 415, 112 Atl. 581 (1921) [a married woman under mistaken impression that husband owned property alone, who failed to disclose her own title at the time of execution of contract of sale by her husband, is not estopped to assert her title as against the purchaser]. See also *Funk v. Newcomer,* 10 Md. 301 (1856). But, here, where there was no duty on the part of the wife to speak since her marriage to the seller was well known to the purchaser, there does not appear to have been any intent on the part of the wife to perpetrate a fraud on the purchaser. Certainly there are not enough facts in the pleadings for us to say, as was said in *Cole v. Cole,* 41 Md. 301 (1875), that we will not

permit a statute designed to prevent fraud to be used as an "engine of fraud." Since the plaintiff failed to show that the wife had made herself a party to the agreement to convey, we hold that the demurrer was properly sustained.

In this case as it is now before us, we do not reach the question suggested by the purchaser in this Court as to the effect of the straw conveyances.

The order of the lower court will be affirmed.

*Order affirmed, the appellant to pay the costs.*