581 A.2d 429

Robert L. KRAMER, et al.

v.

TRI–COUNTY COMMUNITY DEVELOPMENT
CORPORATION, INC., et al.

No. 1847, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Nov. 1, 1990.

As Amended Jan. 17, 1991.

Dale A. Cooter (Paul S. Thaler and Cooter & Gell, on the brief), Washington, D.C., for appellants.

Christopher W. Hornig, Washington, D.C. (Louis P. Jenkins and Nancy T. Bernstine, La Plata, on the brief), for appellees.

Argued before BISHOP and BLOOM, JJ., and JAMES S. GETTY, J. (Retired), specially assigned.

JAMES S. GETTY, Judge.

The Circuit Court for Charles County granted specific performance of a contract to sell 39.94 acres of unimproved land for the sum of $319,500.00. The appellants herein are

the owner-sellers, namely: Robert L. Kramer, Helen E. Kramer, and L.C. Carr, Inc. The appellee-buyer is Tri-County Community Development Corporation, Inc.

For reasons that will unfold in the recounting of the events that occurred among the participants, this case began with a contract of sale, executed by two of the three owners, in October, 1984, and ended in August, 1989, when the court ordered that the appellee was entitled to have the contract specifically performed.

The contract of sale included a $2,000.00 down payment, which was paid, and was conditioned upon an engineering feasibility study to determine the viability of home construction on the site. It was also contingent upon the purchaser obtaining rezoning for cluster town houses. The rezoning effort consumed two years and resulted in approval of the amendment on April 1, 1987. Thereafter, the appellants refused to complete the transfer, citing the failure of the appellee to obtain the signature of Helen E. Kramer on the contract of sale.

The background leading to this appeal begins with the October 18, 1984, contract. Who contacted whom is not clear from the record, but one Fred A. Zihlman signed the initial contract as "Broker or Sales Manager." Unfortunately, Mr. Zihlman died before the trial and his testimony was not available to either party. L.C. Carr, Inc., owned an undivided one-half interest in the 39.94 acre tract; the remaining one-half interest was held by Robert and Helen Kramer as tenants by the entireties.

We are at a loss to understand why the appellee did not insist that Helen Kramer sign the sales contract initially or, at the latest, six months after the contract was executed by Carr and Robert Kramer, when it surely knew of her interest since she signed the request for rezoning.

The Zoning Amendment application is a printed form

listing the applicant as "H.O.U.S.E., Inc.,"[1] and a check mark appears to the right of the applicant's name designating the applicant as "Contract Pur.," the date of the application being April 2, 1985. Both Robert L. and Helen E. Kramer signed the form as owners of record. L.C. Carr signed a separate form as president of L.C. Carr, Inc.

The testimony establishes that, prior to their real estate ventures, both Carr and Kramer were used car salesmen. Kramer is a licensed real estate salesman in Maryland, Pennsylvania and North Carolina. Mr. and Mrs. Kramer are real estate developers, having built three subdivisions in North Carolina through Pinehurst Realty, a company in which Mr. Kramer owns 51% of the stock and Mrs. Kramer owns the remaining 49%. Mr. Kramer testified that Mrs. Kramer has been active in the company "for the last five or six years, and she is actually the rental agent and ... also the receptionist." Mrs. Kramer, according to her husband, works "approximately, I would say, seven months a year." Nearly all of the property owned by the Kramers, including four apartments in Miami, Florida, is titled to them as tenants by the entireties.

Mr. Kramer testified that he told Mrs. Kramer that the sales contract was "strictly an option and that is the way I understood it through Mr. Zihlman." When asked why Mrs. Kramer did not sign the initial contract, Kramer replied that she was never requested to sign it. Referring to the zoning application, Kramer was asked if Mrs. Kramer read it before she signed it and he responded, "My wife would definitely look at that." Neither of the Kramers nor Carr was present at any of the subsequent zoning hearings. According to Mr. Kramer, he notified the appellant that no binding contract existed shortly before the zoning change was approved, by initiating a call to the appellant as soon as he learned of Mr. Zihlman's death.

Mrs. Kramer testified as follows:

---

1. H.O.U.S.E., Inc. is the parent company of Tri–County Community Development Corporation, the contract purchaser.

Q. Fine. Now when that [zoning application] came to you and you have testified that is your signature, did you and your husband discuss that document?

A. Well, to the degree that I had asked him what it was for, what my signature was needed for.

Q. How, if at all, did he respond to that, what did he tell you?

A. He said that we were negotiating on a piece of property for sale in Charles County, and that it needed to be signed in order to, you know, fulfill that.

Responding to further questions, Mrs. Kramer indicated that she paid no attention to the notation that H.O.U.S.E. was listed as a contract purchaser on the zoning application and she stated that she did not recall "ever talking or discussing" the subject of Mr. Kramer and Mr. Carr having signed any contract of sale for the property.

On cross-examination, Mrs. Kramer was asked again about her discussion with Mr. Kramer concerning the zoning application. She responded:

He told me there was a deal pending on the property and that we needed to sign the zoning if there was anything to be negotiated as far as an offer of purchase was concerned, that that is what it was holding on to.

Mrs. Kramer signed the zoning form and did not inquire whether the "deal" was a contract of sale.

Based upon the facts recited above the trial court held that Mrs. Kramer was estopped from asserting any defenses otherwise available to her and granted appellee's demand for specific performance of the contract to convey the 39.94 acres for the $319,500.00 agreed price.

The trial court stated, in pertinent part, the following:

... I am prepared to accept the proposition that nobody was trying to mislead anybody here. That Mr. Kramer was acting in good faith at least toward the plaintiffs. I suspect there has been more conversation between Mr. and Mrs. Kramer than was disclosed here today, at least after the suit was filed, if not before, but the fact is that

what Mr. Kramer signed was ... an agreement to sell this property to ... this plaintiff if the contingencies mentioned were met within a reasonable period of time, and I see no reason why, if a reasonable period of time required more definition, more definition wasn't put in there....

I am satisfied, therefore, that these plaintiffs have met their obligations under this provision of this document. They stand here today, willing and able to perform.

Also, it is understood that as to Mrs. Kramer ... this document was executed by Mr. Kramer without any express or implied authority from her ... Mrs. Kramer tells us today that that [signing the zoning form] was the first time she learned that anything was really in the works with regard to this piece of property and that Mr. Kramer told her that a deal was in the works and he was negotiating with these people who were interested in buying the property, which, generally speaking, is not necessarily an inaccurate description of things as they were at that point, but we know today, and Mrs. Kramer could have discovered at that time, for the asking, that Mr. Kramer had signed a document that was somewhat more refined than that and that put him, at least, and Carr, at least, in a more circumspect position....

Mrs. Kramer was presented with a document that identified someone ... as the contract purchaser of a piece of property.

Mr. Kramer is in the real estate business. Mrs. Kramer, to a lesser extent, is in the real estate business. Both read and write and those terms mean something, and ... the explanation we have here today from Mr. and Mrs. Kramer that, "well I don't remember the specific discussion beyond what was said here, I don't remember that we talked about it any more than that, I didn't read the contract, I never do," that was said by Mr. Kramer, just doesn't bode very well here. Those explanations don't bode very well here, particularly when, as is manifest from this evidence, the plaintiffs relied on their having

read the document and they incurred detriment and whether it is twelve thousand or twenty-three thousand dollars is beside the point here . . .

The only issue here is whether Mrs. Kramer's inaction, for that matter her conduct in signing the zoning application, coupled with further inactions, is the kind of act and/or omission that would provoke an estoppel . . .

She could have nipped the thing in the bud right then (when she signed the zoning form identifying contract purchasers), she could have prevented all that succeeded by saying, no, I am not going to sign it or asking Mr. Alvey more particularized questions than apparently she did . . . I am prepared to believe he had a copy of the document he signed. If she wanted to read it, she could. They both could have read it . . . When they didn't, more particularly, when Mrs. Kramer didn't, the plaintiffs undertook the effort and the expense that has been involved and I find had every good reason to expect the Kramers would cooperate at the point where the zoning process and the other conditions mentioned in the agreement were met.

I conclude, therefore, that Mrs. Kramer is estopped here to interpose the defenses to this action that otherwise would be available.

### The Law

The trial court relied upon *Alvey v. Alvey,* 220 Md. 571, 155 A.2d 491 (1959), and upon *Bean v. Steuart Petroleum,* 244 Md. 459, 224 A.2d 295 (1966), in ordering specific performance. Factually, the two cases are not apposite. *Alvey* involved a contract by a husband to sell a parcel of real estate titled in his name alone. The seller's wife was fully aware of the contract and agreed to the sale. A later dispute resulted in a suit for specific performance against the sellers with the buyer contending that the seller's wife was equitably estopped from denying that she was a party to the agreement to sell. The court disagreed, stating that the wife had no present interest that she could convey, but

she did have a dower interest that she could have released had she been requested to do so. The seller's wife, furthermore, did not conceal or misrepresent any material facts on which the purchaser was entitled to rely. The trial court in the case *sub judice* relied upon dicta in *Alvey* that suggested that had the wife owned the property with her husband and knowingly remained silent, thereby misleading the purchaser to his detriment, "the situation might be different." *Id.* [220 Md.] at 576, 155 A.2d 491.

In the present case there is no evidence that the wife had any prior knowledge of the sales contract, or that she knowingly remained silent, thereby misleading the buyer. The court, moreover, specifically found that Mrs. Kramer did not intentionally mislead anyone. *Alvey* is inapposite.

*Steuart Petroleum, supra,* is also distinguishable from the matter before us. In that case an owner of a gasoline service station, fully aware that another station across the road was being constructed in violation of a restrictive covenant, sat quietly until the new station opened for business and then sought to enjoin the conducting of the enterprise. The Court held that estoppel operated in favor of the good faith builders and against the silent observer. The trial court herein analogizes the silent station owner in *Steuart* with the actions of Mrs. Kramer in allowing the zoning amendment effort to continue and reaping the benefit of the change to cluster housing without disclosing her intention to refuse to sign the contract. This result requires a quantum leap from the knowledge admitted in *Steuart* and the lack of knowledge proved as to Mrs. Kramer. We do not find *Steuart* relevant, or persuasive, in the present case.

The definition of equitable estoppel in Maryland is that contained in 3 J. Pomeroy, *Equity Jurisprudence,* sec. 804 (5th ed. 1941):

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, or contract, or

of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

From the definition in Pomeroy, equitable estoppel is comprised of three elements: voluntary representation, reliance, and detriment. *See Knill v. Knill,* 306 Md. 527, 535, 510 A.2d 546 (1986). A party claiming the benefit of estoppel must have been misled to his injury and changed his position for the worse having believed and relied upon the representations of the party sought to be estopped. *Id.* at 534, 510 A.2d 546. *See Dahl v. Brunswick Corporation,* 277 Md. 471, 356 A.2d 221 (1976). Although wrongful or unconscionable conduct is generally an element of estoppel, an estoppel may arise even where there is no intent to mislead, if the actions of one party cause a prejudicial change in the conduct of another. *See Travelers v. Nationwide,* 244 Md. 401, 224 A.2d 285 (1966); *Harrison v. McCarty,* 178 Md. 377, 13 A.2d 544 (1940); *Benson v. Borden,* 174 Md. 202, 198 A. 419 (1938).

Whether an estoppel exists is a question of fact to be determined on a case-by-case basis. *Gould v. Transamerican Assoc.,* 224 Md. 285, 297, 167 A.2d 905 (1961). The trial court decided that Mrs. Kramer had an affirmative duty to inquire about the particulars of the zoning amendment when she signed it and to look at the contract since the zoning form listed the applicant as a contract purchaser. The evidence, however, establishes that she was advised that an option to purchase was being *negotiated* and rezoning was a condition thereto. There is no evidence that Mrs. Kramer had any knowledge that a contract had been signed by Mr. Kramer or by Mr. Carr. All that the record discloses is that she agreed to have a potential buyer attempt to have the property rezoned. We are aware of no authority, and none has been cited to us, requiring a spouse to verify what she is told in good faith at the risk of losing title in the event of a failure to make further inquiry.

When Mrs. Kramer signed the request for rezoning, furthermore, her identity as the wife of Robert Kramer was as well known to the appellee herein as was the fact that she had not signed the contract of sale. The appellee, however, made no effort to have her sign the contract. Based upon these facts, we cannot conclude that Mrs. Kramer had any duty to speak, and her silence cannot be construed to require that she be divested of her title by precluding her from raising the defense of the Statute of Frauds or any other defense available to her.

In *Milburn v. Michel,* 137 Md. 415, 423, 112 A. 581 (1921), referring to equitable estoppel, the Court of Appeals said:

> Where the condition of the title is known to both parties, or both have the same means of ascertaining the truths, there can be no estoppel.... "[T]here can be no equitable estoppel short of one arising from actual contract where the truth is known to both parties, or where both parties have equal means of knowledge."

Applying the above reasoning to the facts herein, clearly the appellee knew, before it incurred all of the expenses of rezoning, that Mrs. Kramer owned an undivided one-half interest in the property with her husband and, further, that she had not signed the contract.

The trial court herein did not make explicit findings of fact and conclusions of law. Clearly, he found no fraud by Mrs. Kramer and no knowledge on her part of any contract of sale. Implicit in the court's assertion that she should have asked more questions about the zoning form is the conclusion that she was unaware of any sales contract. Appellee agrees that this is not a case of silence by one who had a duty to speak, because silence can only be a basis for equitable estoppel where one is possessed of knowledge of the facts and remains silent despite a duty to speak.

■ Equitable estoppel should be applied with great caution when invoked for the purpose of effecting change in title to land. The doctrine will be applied where to refuse its application would amount to sanctioning the perpetration of fraud. On the facts of this case, however, we do not believe the acquiescence of an owner in allowing a potential

contract purchaser to seek a zoning change for a forty acre tract of land, a controversial undertaking in most cases and in this one, with no knowledge of a contract having been signed by the other owners, ought to forfeit her title.

■ A secondary issue relates to whether the zoning application signed by Mrs. Kramer satisfies the exception to the Statute of Frauds which permits a memorandum signed by the party to be charged therewith to satisfy the statute. We hold it does not. Section 5–104 of Md. Real Property Code Ann. states:

> No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him.

The zoning application form signed by Mrs. Kramer identifies an entity, "H.O.U.S.E., Contract Pur." This is acknowledgment of an authorization to seek rezoning. We do not agree that specific reference is made to any contract, or that Mrs. Kramer had impliedly consented to sell the property involved. Finally, we find no merit in the appellants' suggestion that the contract is unenforceable due to appellee's delay in effecting settlement.

For the reasons stated herein, we reverse the judgment of the circuit court as to Robert L. and Helen E. Kramer. The appellee is not without recourse, however. It may pursue its remedies at law for damages or accept specific performance from L.C. Carr, Inc., as to its interest in the property only.

JUDGMENT REVERSED AS TO ROBERT L. AND HELEN E. KRAMER.

COSTS TO BE PAID BY APPELLEE.