# JOHN H. HUNT, EXECUTOR OF ROBERT S. HUNT, *vs.* JOHN F. GONTRUM, TRUSTEE, ETC.

*Liability of Trustees—Collecting Notes—Investment of Trust Funds— Acquiescence of cestui que trust.*

A trustee to whom a sum of money is bequeathed has no right to accept from the executor of the testator a promissory note of a third person, in part payment of the legacy ; and if he does accept it, he ought to proceed at once to collect the same.

If at the time of accepting such note it could be collected, and the trustee neglects to do so for some years until the maker becomes insolvent, his estate is liable to make good the loss to the trust fund.

In the absence of express authority in the instrument creating the trust, a trustee has no right to invest the funds in personal securities, and if he does, he makes the investment at his own peril ; and even where the investment is left to his discretion, it is not the exercise of a sound discretion to invest in such securities.

If a trustee makes an improper investment of the trust fund at the request of the *cestui que trust,* or if the *cestui que trust* consents to the investment, the trustee will not be held liable to make good a loss arising from the same. But to relieve the trustee from liability in such cases, the *cestui que trust* must be *sui juris,* and capable of acting for himself, and the acquiescence must be with full knowledge of the facts, and with knowledge as to his legal rights.

Appeal from a decree of the Circuit Court for Anne Arundel County (JONES, J.), made on May 24, 1894, by which it was adjudged that John F. Gontrum, trustee of the estate of William Galloway, under the last will of Miriam R. Lyons, deceased, recover against John H. Hunt, executor of the last will of Robert S. Hunt, deceased, the sum of $692.80, with interest, &c. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, PAGE and BOYD, JJ.

*James M. Munroe*, for the appellant, cited: *Perry on Trusts*, (4th Ed.), secs. 440, 467, 849-851, 870; *Waring* v. *Darnall*, 10 G. & J. 140.

*J. Wirt Randall* and *Daniel R. Randall*, for the appellee, cited: 1 *Lewin on Trusts*, 287, 288, 317; 1 *Perry on Trusts*, secs. 440, 452, 453; *Beach, Mod. Equity Juris.*, secs. 245, 263, 265; *Hill on Trustees*, 382, 525; *Harrington* v. *Ketellas*, 47 N. Y. 40; *Wayman* v. *Jones*, 4 Md. Ch. 500; *Maccubbin* v. *Cromwell*, 1 G. & J. 167; *Ringgold* v. *Ringgold*, 1 H. & G. 11; *Hoffman Steam Coal Co.* v. *Cumberland*, *etc., Co.*, 16 Md. 508; *Zimmerman* v. *Fraley*, 70 Md. 561; *Bentley* v. *Shreve*, 2 Md. Ch. 218; *Diffenderffer* v. *Winder*, 3 G. & J. 342; *Bispham's Principles of Equity*, 183.

ROBINSON, C. J., delivered the opinion of the Court.

Mrs. Miriam R. Lyons died in 1875, and by her will she bequeathed to Robert S. Hunt one thousand dollars "in trust for the sole use and benefit" of her nephew, William Galloway. Instead of demanding the payment of this legacy in money, as it was the plain duty of the trustee, he accepted from the executor of Mrs. Lyons certain promissory notes held by him, and among these notes was one of Thomas J. Perry, dated June 25th, 1878, for the payment of $451.92. The interest on this note was regularly paid by Perry to the trustee till 1885, but from that time no interest has been paid nor were any steps taken by the trustee to enforce the collection of the note. Perry died 1888, and his estate it is said is insolvent; and Hunt, the trustee, died 1889. This is a proceeding by the appellee, appointed trustee in the place of Hunt, against Hunt's executor, to recover the loss sustained by the *cestui que trust*, on account of the Perry note.

The case was submitted to the Court below upon a written agreement of counsel, and the questions submitted for its determination, are whether Hunt, trustee, ought and could have reduced the Perry note to money? And secondly,

whether Galloway, the *cestui que trust*, acquiesced or consented to the breach of trust of the trustee?

That it was the duty of the trustee to have taken proper steps at once to collect the money due on the note, there can be no question.    He had no right in the first place to accept the assignment of the note from Mrs. Lyons' executor in part payment of the legacy, but ought to have demanded its payment in money.    And if he did accept it, he ought to have proceeded at once to collect the note.    In the absence of express authority in the instrument creating the trust, atrustee has no right to invest trust money in *personal securities*, and if he does, he *makes the investment at his own peril.*    And even where the investment is left to his discretion, it is well settled that it is not a sound discretion to invest in such securities.    *Walker* v. *Symonds*, 3 Swans, 62 ; *Drake* v. *Martyr*, 1 Beav. 525 ; *Vigrass*, v. *Binfield*, 3 Madd. 62.    In *Holmes* v. *Dring*, 2 Cox, 1, Lord Kenyon said :    " No rule was better established, than that a " trustee could not lend on mere personal security and it " *ought to be rung* in the ears of every one who acted in the " character of trustee."

It is equally clear, too, we think, that the trustee could have collected the money due on this note· if proper steps had been taken to enforce its payment in 1878, when it was assigned to him.    Perry was at· that time the owner of a farm containing 123 acres, for which he paid $3,000, and the only lien upon it from 1883 down to his death in 1888 was·a mortgage of $800.    He had besides personal property worth at least $600.    Doctor Franklin, the executor of Mrs. Lyons, says he was at the time of the assignment a prosperous farmer and he considered him perfectly good for the payment of the note.    Now there is testimony to show that when Perry died in 1888, ten years after the note had been given in part payment of the legacy, his estate was insolvent, but his ability to pay a note of $451 *in 1878, is not to be decided by his pecuniary condition in 1888.*    In the mean time his real estate had depreciated in value, part of his personal

property was gone—had in fact diminished one-half in value; and besides he had incurred other debts and liabilities. So, looking to the proof in the record before us, we are satisfied that this note could have been collected by the trustee if he had taken the proper steps for that purpose.

And this brings us to the remaining question whether there was any *consent* or *acquiescence* on the part of Galloway, the *cestui que trust*, to the breach of trust by the trustee. If a trustee makes an improper investment of the trust fund, at the request of the *cestui que trust*, or if the *cestui que trust* acquiesces or consents to the investment, the trustee will not be held liable to make good the loss arising from such investment. But to relieve the trustee from liability in such cases, the *cestui que trust* must be *sui juris* and capable of acting for himself, and the *acquiescence* must be with full knowledge of the facts and circumstances and with knowledge as to his legal rights. In *Walker* v. *Symonds*, 3 Swans, 62, where the law on this subject was fully considered by Lord Eldon, a deed of compromise by a *cestui que trust* was rescinded and the co-trustees held responsible for the loss of the trust fund, on the ground that the *cestui que trust* had not proper information of her own rights and the liabilities of the trustees at the time of the execution of the deed.

In this case it cannot be said that the acceptance of the Perry note was done at the request or with the consent of Galloway the *cestui que trust*, for he was at that time but eight years old. Nor do we find any acquiescence on his part after his arrival at age in the breach of trust committed by the trustee. He did in 1885 write to the trustee requesting him to deliver to him, Galloway, the several notes held in trust for him, and did express his willingness to accept the notes, but at the same time he says, "*I presume they could be collected at any time.*" He did not know nor had he a right to assume that one of these notes, the Perry note constituting almost one-half of the trust fund, was insolvent. He supposed, as he says, that the notes were good and

could be collected at any time.   By no fair rule of construction can this letter of the *cestui que trust* be construed as an acquiescence on his part, with full knowledge of all the facts and circumstances connected with this note and with knowledge of his legal rights and the liability of the trustee for the failure to enforce the payment of the note at a time when Perry was solvent.   We agree, therefore, with the learned Judge below that Hunt's estate must be held liable for the loss of the trust fund arising from the insolvency of the Perry note.

*Decree affirmed.*

(Decided November 22nd, 1894.)