935 A.2d 671

**Denise TAYLOR**

v.

**Marc MANDEL.**

**No. 3, Sept. Term, 2007.**

Court of Appeals of Maryland.

Nov. 9, 2007.

Raker, J., filed dissenting opinion in which Bell, C.J., and Cathell, J., joined.

110

Denise A. Taylor, pro se, for petitioner.

Akiva Y. Gross (Marc E. Mandel of Law Office of Marc E. Mandel, LLC, Towson), on brief, for respondent.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL (Retired, specially assigned), JJ.

BATTAGLIA, J.

The case *sub judice* presents us with the issue of whether a grandparent seeking custody or visitation rights of a minor grandchild may be assessed guardian ad litem [1] fees in the litigation she initiated. Denise Taylor, the grandmother against whom such fees were assessed, presents us with the following four questions:

1) Did the Court Err in assessing Guardian Ad Litem's Counsel Fees against Petitioner, the maternal grandmother of the children?

2) Did the Court Err in assessing the costs of the Respondent's appendix against Petitioner when Respondent failed to comply with Md. Rule 8–501(d)?

3) Did the application of Md. Family Law Code Ann. Section 1–202 to Petitioner and the procedure used to establish Petitioner's liability violate the due process clause and Articles 19 and 24 of the Maryland Declaration of Rights?

4) Did the Court Err in finding that the GAL's [2] bill was reasonable under all the circumstances of the case?

Because we hold that the circuit court erred in assessing guardian ad litem fees against Taylor, we reverse the Court of Special Appeals.[3]

---

1. As explained by Judge John C. Eldridge in *Fox v. Wills,* 390 Md. 620, 890 A.2d 726 (2006), "the term 'guardian *ad litem*' has been rarely used by the Maryland General Assembly or by this Court," and that "it usually has been synonymous with 'next friend' or *'prochein ami,'* which is one who brings suit on behalf of a minor or disabled person because the minor or disabled person lacks capacity to sue in his or her own right, or synonymous with one who defends a suit against a minor or disabled person lacking the capacity to defend." *Id.* at 625–26, 890 A.2d at 729. Both the circuit court and the Court of Special Appeals used the term "guardian ad litem," however, and in order to avoid confusion, we will do the same.

2. "GAL" refers to guardian ad litem.

3. Because we answer question one in the Petitioner's favor, we need not address the other three questions.

## I. Introduction

On March 23, 2004, Denise Taylor, Petitioner, and Diane Miskimon,[4] filed a complaint against Kristi and William Biedenback in the Circuit Court for Baltimore County, seeking custody of, or in the alternative visitation with, Taylor's grandchildren, Tristian and Memorie Biedenback. Taylor, the maternal grandmother, alleged that the children, while in the physical custody of the Biedenbacks, had been physically and sexually abused and neglected. The Biedenbacks filed an answer to the complaint denying the allegations of physical and sexual abuse, asking the court to dismiss Ms. Miskimon as a plaintiff, and requesting the court to order that the minor children remain in the custody and care of the Biedenbacks and to deny Taylor visitation. The Biedenbacks also filed a motion to dismiss the complaint to which Taylor filed a memorandum in opposition seeking denial of the Biedenbacks' motion and requesting pendente lite custody of the children, a home study, a guardian ad litem for the children, and an emergency hearing.

When the Biedenbacks failed to answer Taylor's requests for pendente lite custody of the children, a home study, a guardian ad litem for the children, and an emergency hearing, Taylor filed a request for an order of default iterating her request for a guardian ad litem and a home study. Taylor also filed a motion for an order compelling discovery, asking the court to order the Biedenbacks to file answers to interrogatories that had been served earlier.

Without a hearing, the Circuit Court for Baltimore County granted Taylor's motion to compel discovery, entered an order of default, appointed Marc E. Mandel, Esquire, Respondent, as guardian ad litem for the children, and ordered that a home study be completed; subsequently, Mandel, himself, submitted an amended order containing information regarding the fees

---

4. Diane Miskimon signed the initial complaint and was listed as a party. The parties agreed to dismiss Ms. Miskimon as a plaintiff, and she is not involved in this appeal.

of the guardian ad litem, which was signed by the circuit court:

THE ORDER OF THIS COURT dated September 15, 2004 appointing Marc E. Mandel, Esquire, Guardian Ad Litem for the minor children is this 18th day of October, 2004 amended as follows:

\* \* \*

1. To consent or not to the release of privileged medical and/or psychiatric/psychological information regarding the minor children pursuant to *Nagel v. Hooks*; and,

2. To represent the best interests of the minor children as their *guardian ad litem* regarding the issues of custody and visitation, and in that regard to participate fully in pre-trial discovery, hearings and trial on the merits; and it is further,

ORDERED that Marc E. Mandel, Esquire, as attorney for the minor children, shall have access to copies of the case file and all records regarding this action including, but not limited to, access to the records and/or evaluations of any therapist, psychiatrist, psychologist, or mental health professional as well as any Department of Social Services records regarding the minor children; and it is further,

ORDERED that the Court hereby reserves for future determination the award of reasonable counsel fees to Marc E. Mandel, Esquire, upon the filing of a Petition for Counsel Fees by said counsel; and it is further,

ORDERED that each party shall advance to her or his counsel of record the sum of $1,000.00, which said sum shall be held in escrow subject to further Order of this Court regarding apportionment between the parties of their respective obligations to pay the reasonable counsel fees of the attorney for the minor children.

Taylor did not file an objection to the amended order, request a hearing, or file a motion to reconsider, but rather complied and deposited $1,000.00 into her attorney's escrow account.

Taylor and the Biedenbacks eventually reached an agreement, putting the settlement on the record in April of 2005. Mandel subsequently filed his petition for guardian ad litem fees,[5] and filed an amended petition for guardian ad litem fees two days later, seeking $9,041.73.

Taylor filed an Opposition to Guardian Ad Litem's Amended Motion for Counsel Fees in which she challenged the hourly rate charged, the amount of time billed and the proposed apportionment of the bill. Primarily, though, she asserted that Mandel could not recover guardian ad litem fees from her because she was not a "parent" within the purview of Section 1–202 of the Family Law Article, Maryland Code (1999, 2004 Repl.Vol.).[6] Additionally, Taylor contended that guardian ad

---

**5.** Mandel's first petition for guardian ad litem fees incorrectly stated that "by prior Amended Order of this Court, the parties were to provide $2,000 each to their respective attorneys to be held in escrow to offset the costs of the GAL's fees." Mandel's amended petition for guardian ad litem fees is identical except that it corrected this mistake, stating that "by prior Amended Order of this Court, the parties were to provide $1,000 each to their respective attorneys to be held in escrow to offset the costs of the GAL's fees."

**6.** Section 1–202 of the Family Law Article, Maryland Code (1999, 2004 Repl.Vol.), provided:

**Appointment of counsel for minor.**
In an action in which custody, visitation rights, or the amount of support of a minor child is contested, the court may:
(1) appoint to represent the minor child counsel who may not represent any party to the action; and
(2) impose against either or both parents counsel fees.
Section 1–202 was amended in 2006 and currently states:
(a) *In general.*—In an action in which custody, visitation rights, or the amount of support of a minor child is contested the court may:
(1) (i) appoint a lawyer who shall serve as a child advocate attorney to represent the minor child and who may not represent any party to the action; or
(ii) appoint a lawyer who shall serve as a best interest attorney to represent the minor child and who may not represent any party to the action; and
(2) impose against either or both parents counsel fees.
(b) *Standard of care.*—A lawyer appointed under this section shall exercise ordinary care and diligence in the representation of a minor child.
Md.Code (1999, 2006 Repl.Vol.), § 1–202 of the Family Law Article.

litem fees could not be awarded under Section 12–103 of the Family Law Article, Maryland Code (1999, 2004 Repl.Vol.),[7] because that Section refers to "counsel fees."

The circuit court granted Mandel's motion for guardian ad litem fees without a hearing and awarded him $7,041.73: Taylor and Ms. Miskimon were ordered to pay $5,962.13, and the Biedenbacks were ordered to pay $1,079.60. Taylor filed a motion requesting that the court reconsider its Order Granting Guardian Ad Litem's Amended Motion for Counsel Fees, or in the alternative, to hold a hearing to ascertain what fees were fair and reasonable and how the fees should have been apportioned; Taylor again argued that the circuit court did not have the authority to assess guardian ad litem fees against her. The Biedenbacks filed a similar motion for reconsideration, seeking the same relief as Taylor had requested. Ms. Miskimon subsequently filed a motion for reconsideration, asserting that the parties had agreed to a stipulation of

---

7. Section 12–103 of the Family Law Article, Maryland Code (1999, 2004 Repl.Vol.), stated:

**Award of costs and fees**

(a) *In general.*—The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or

(2) files any form of proceeding:

(i) to recover arrearages of child support;

(ii) to enforce a decree of child support; or

(iii) to enforce a decree of custody or visitation.

(b) *Required considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party; and

(3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

(c) *Absence of substantial justification.*—Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees.

Section 12–103 has not been amended. *See* Md.Code (1999, 2006 Repl.Vol.), § 12–103 of the Family Law Article.

dismissal of Ms. Miskimon as a plaintiff, and therefore, she should not have been assessed guardian ad litem fees.

On July 18, 2005, the circuit court struck the May 26th order granting guardian ad litem fees and scheduled a hearing. At the hearing, Taylor argued that the guardian ad litem fees were excessive and also contended that the guardian ad litem did not have the ability to recover fees from Taylor because she was not a "parent" under Section 1–202, and because Section 12–103 did not pertain to guardian ad litem fees. Nevertheless, the circuit court issued a memorandum opinion, awarding guardian ad litem fees to Mandel and rejecting Taylor's argument that there was no statutory authority allowing a guardian ad litem to collect fees from Taylor because this argument had been waived when Taylor requested the appointment of the guardian ad litem without objecting to the payment of fees:

> The Court's authority to award attorneys fees to a Guardian Ad Litem is not limited to awards against "parents" under Md.Code Ann., Family Law Art., Sec. 12–103 or 1.202, particularly in circumstances where the party advancing that argument is the party who asked for the appointment of the GAL in the first place without registering any objection to paying the GAL's fees in connection with the order appointing the GAL. To the extent that there is some argument to be advanced here, it has plainly been waived by the Plaintiff.

The court also concluded that "according to the Family Division Guidelines," the Biedenbacks were "exempt from having to pay GAL's legal fees"[8] and even if that was not the

---

8. The Biedenbacks argued that they were exempt from paying the guardian ad litem fees under Maryland Rule 1–325(a), which provides in relevant part that "[a] person unable by reason of poverty to pay any filing fee or other court costs ordinarily required to be prepaid may file a request for an order waiving the prepayment of those costs," and Maryland Rule 2–603(e), which states:

> (e) **Waiver of costs in domestic relations cases—Indigency.** In an action under Title 9, Chapter 200 of these Rules, the court shall waive final costs, including any compensation, fees, and costs of a master or

case, given the financial circumstances of the parties, "it is clear that the GAL's fees should be borne by [Taylor]." A judgment in favor of Mandel against Taylor in the amount of $6,821.73 was filed and docketed.

Subsequently, Taylor filed a Motion to Vacate Judgment or in the Alternative Amend and Stay Judgment Pending Appeal requesting that the court either vacate the judgment against her, vacate the judgment and order her to pay the guardian ad litem fees, or stay the judgment pending the appeal. Mandel then filed a motion for reconsideration requesting that the court award him the full amount of his guardian ad litem bill, $9,041.73, as well as prejudgment and post-judgment interest.

The circuit court granted Taylor's Motion to Vacate or in the Alternative Amend and Stay Judgment Pending Appeal. The court vacated the judgment against Taylor but ordered that she pay Mandel $6,821.73.[9]

Taylor noted an appeal to the Court of Special Appeals, before which she argued that the circuit court erred in assessing guardian ad litem fees against her because she was not a "parent" within the purview of Section 1–202 of the Family Law Article, and because Section 12–103 only involves "counsel fees." In an unreported opinion, the intermediate appellate court affirmed the imposition of guardian ad litem fees against Taylor and concluded that although neither Section 1–202 nor Section 12–103 of the Family Law Article authorized the lower court to impose guardian ad litem fees against Taylor, Taylor had "impliedly consented to the court's action"

---

examiner if the court finds that the party against whom the costs are assessed is unable to pay them by reason of poverty. The party may seek the waiver at the conclusion of the case in accordance with Rule 1–325(a). If the party was granted a waiver pursuant to that Rule and remains unable to pay the costs, the affidavit required by Rule 1–325(a) need only recite the existence of the prior waiver and the party's continued inability to pay.

9. After noting her appeal to the Court of Special Appeals, Taylor sent a check for $6,821.73 to Mandel "to be deposited and kept in your escrow account" pending the appeal. The circuit court subsequently recorded a judgment against Taylor. Taylor filed a motion to vacate in response, which is still pending in the trial court.

because of her request to appoint a guardian ad litem and deposit of $1,000.00 into her attorney's escrow account:

The court did not expressly state the basis for its order requiring appellant to pay appellee's attorney's fees. Appellant correctly observes, however, that the only possible bases are the statutes contained in Md.Code (2006), § 1–202 and § 12–103 of the Family Law Article ("F.L."). Appellant contends that neither authorizes a court to order the grandmother of minor children, involved in a custody dispute with the parents, to pay the fees of counsel appointed to represent the minor children. Appellant also contends, because the issue is one of subject matter jurisdiction, the issue cannot be waived.

Section 1–201 of the Family Law Article provides that an equity court has jurisdiction over the custody, visitation, guardianship, and support of a child.

Section 1–202 provides that

[i]n an action in which custody, visitation rights, or the amount of support of a minor child is contested, the court may:

(1) appoint to represent the minor child counsel who may not represent any party to the action; and

(2) impose against either or both parents counsel fees.

We agree with appellant that the statute does not authorize the court to impose fees against appellant. The plain language is that the court can impose fees against parents, not grandparents. *See In re Ramont K.,* 305 Md. 482[, 505 A.2d 507] (1986) (grandparent does not come within the term "parents" as used in Md.Code (1974, 1984 Repl.Vol.) § 3–829 of the Courts and Judicial Proceedings Article pertaining to restitution on behalf of children involved in certain delinquent acts).

Section 12–103 of the Family Law Article provides that a court "may award to either party the costs and counsel fees that are just and proper under all the circumstances" in a custody proceeding. Generally, this section applies when a party requests a court to order another party to pay the

party's counsel fees. We must read F.L. §§ 1–202 and 12–103 as being consistent with each other, if at all possible. It is questionable whether § 12–103 encompasses the payment of fees incurred by counsel for minor children, *see Goldberg v. Miller*, 371 Md. 591 [, 810 A.2d 947] (2002), but assuming it does when a parent is ordered to pay, *see Carroll County Department of Social Services v. Edelmann*, 320 Md. 150[, 577 A.2d 14] (1990), it does not expressly authorize an order requiring a grandparent to pay such fees. § 1–202 expressly limits such orders to parents. Consequently, § 12–103 did not authorize the order requiring appellant to pay appellee's fees.

Despite the above, we shall affirm the court's order because appellant impliedly consented to the court's action.

Unquestionably, the court had subject matter jurisdiction to determine issues of custody and visitation, and it had personal jurisdiction over the parties and the children. The court had statutory authority to appoint counsel for the children and apportion fees, and while it did not have authority to award fees against appellant, appellant consented to apportionment of fees, between the parties, by the court.

Appellant requested the court to appoint a guardian ad litem/counsel. After the court entered an order reserving for future determination the appropriate apportionment of fees between the parties, appellant not only failed to object but complied with the order by depositing $1,000 into an escrow account. Appellant impliedly consented to the apportionment of appellee's fees. *See Van Schaik v. Van Schaik*, 90 Md.App. 725[, 603 A.2d 908] (1992) (a party was held to have consented to appointment of counsel for a minor even though proceeding was uncontested).

The intermediate appellate court also rejected Taylor's arguments that the guardian ad litem bill was excessive, that the bill did not reflect services provided to the children, and that the circuit court failed to consider the circumstances of the parties mandated by statute. Additionally, the panel concluded that Taylor "was not deprived of due process."

We granted Taylor's petition for writ of certiorari. *Taylor v. Mandel,* 398 Md. 314, 920 A.2d 1059 (2007).

## II. Discussion

Taylor argues that the circuit court erred in assessing guardian ad litem fees against her because there is no statute or contractual understanding into which she entered to support such an assessment. Taylor contends that the plain language of Section 1–202 of the Family Law Article only permits the court to assess guardian ad litem fees against a parent, not a grandparent; Taylor also argues that Section 12–103 of the Family Law Article is inapplicable because it involves the payment of "counsel fees" for the benefit of an aggrieved party, and not payment of guardian ad litem fees. Taylor contends that she did not waive her right to object to the guardian ad litem fees by depositing $1,000.00 into her attorney's escrow account and by failing to contest the fees until Mandel filed his petition because she did not intend to waive her objection to the guardian ad litem fees and because she deposited the money into her attorney's escrow account involuntarily pursuant to a court order.

Conversely, Mandel argues that the circuit court did not err in imposing guardian ad litem fees against Taylor, contending that such authority exists under either Section 1–202 or Section 12–103 of the Family Law Article. Mandel contends that the Legislature did not intend to limit the term "parent" in Section 1–202 to just a father and a mother, and that Taylor could be assessed fees as a "person acting as a parent." Section 12–103, Mandel asserts, authorizes a court to assess guardian ad litem fees against any party, citing *Carroll County Department of Social Services v. Edelmann,* 320 Md. 150, 577 A.2d 14 (1990), for support. Mandel also argues that because Taylor impliedly consented to the appointment of the guardian ad litem and the payment of guardian ad litem fees by depositing $1,000.00 into her attorney's escrow account, she therefore waived her right to object to the fees, citing *Van Schaik v. Van Schaik,* 90 Md.App. 725, 603 A.2d 908 (1992), for support. Mandel further argues that in the trial court,

Taylor did not preserve the statutory issue relating to the term "parent" under Section 1–202 of the Family Law Article because she did not object to the initial amended order of October 18, 2004 and did not argue that the court exceeded its statutory authority until Mandel had filed his petition for fees after the case had ended.[10]

██ If we agreed with Mandel that Taylor did not adequately preserve her statutory argument, that decision could be initially dispositive. Although we do not agree with Mandel, we shall address the preservation issue first.

The general rule of preservation is that a party will only be permitted to raise on appeal an error to which he has interposed a seasonable objection. Maryland Rule 2–517(c) ("For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection."). *See also Tierco Md., Inc. v. Williams,* 381 Md. 378, 416, 849 A.2d 504, 527 (2004); *J.L. Matthews, Inc. v. Md.-Nat'l Capital Park & Planning Comm'n,* 368 Md. 71, 106 n. 29, 792 A.2d 288, 308 n. 29 (2002)

---

**10.** Mandel contends that there is a discrepancy between Taylor's Notice of Appeal and her Civil Appeal Information Report. He asserts that it is unclear what order Taylor was appealing, because the Notice of Appeal stated that Taylor was appealing the January 31, 2006 order granting guardian ad litem fees to Mandel, but the Civil Information Report provided that Taylor was appealing the May 5, 2005 motion by guardian ad litem to recover fees. However, not only did Mandel acknowledge in his own Civil Appeal Information Report that Taylor was appealing from the January 2006 ruling, but also pursuant to Maryland Rule 8–205(f), the information contained in the information report should not "(1) be treated as admissions, (2) limit the disclosing party in presenting or arguing that party's case, or (3) be referred to except at a prehearing or scheduling conference."

("[A] contemporaneous objection made at the time of the ruling ordinarily preserves the issue for appellate review.").

While it is apparent that Taylor, in both the circuit court and the Court of Special Appeals, argued that she could not be held responsible for payment of the guardian ad litem fees because she was not a "parent" under Section 1–202 of the Family Law Article and because Section 12–103 only pertains to "counsel fees," Mandel argues, nevertheless, that Taylor's objection to the guardian ad litem fees was too late, ergo, untimely. In effect, Mandel contends that Taylor had to object at that time to the October 18, 2004 amended order appointing the guardian ad litem, requiring Taylor to deposit $1,000.00 into her attorney's escrow account, and reserving to the court the power to determine the apportionment of the guardian ad litem fees at a later date.

For support, Mandel cites *Steinhoff v. Sommerfelt,* 144 Md.App. 463, 798 A.2d 1195 (2002). In that case, Steinhoff obtained a judgment of divorce from his wife, Sommerfelt, and the court reserved the issues of alimony, marital property, attorney's fees and litigation costs. Following the court's memorandum opinion and order in which the court granted Sommerfelt a monetary award of $191,403.00, Steinhoff moved to alter and amend the judgment, arguing that "the trial court erred by refusing to grant a Qualified Domestic Relations Order" to Sommerfelt, which would have allowed the court to transfer retirement assets to Sommerfelt as part of her award. Because the husband had failed to raise the issue of a Qualified Domestic Relations Order earlier, Sommerfelt argued that Steinhoff had not preserved the issue for appeal. The Court of Special Appeals agreed, referring to the husband's motion to alter or amend as "a Stab at Belated Preservation." *Id.* at 483, 798 A.2d at 1206. The intermediate appellate court concluded that because the issue was not preserved for appeal during the pendency of the divorce action, it could not be preserved for appeal by raising it for the first time in a post-trial motion:

The appellant may not exploit an appeal from a post-trial procedure as a device to outflank the non-preservation bar

to an appeal from a trial procedure. One may not preserve an issue *nunc pro tunc.*

The appeal as to this contention, whatever it is, does not turn square corners. If, indeed, it is the ... monetary award itself that is being appealed from, we will not allow the appellant's reference to raising the issue in a post-trial motion to serve as a smokescreen obscuring the earlier and fatal non-preservation.

*Id.* at 483–84, 798 A.2d at 1206–07.

On the *Steinhoff* foundation, Mandel argues that Taylor's failure to object after the October 18th amended order was entered is fatal because guardian ad litem fees were addressed in that order. Taylor argues that she was not required to object to the amended order because it did not define what, if any, would be her liability for the guardian ad litem fees and because it was issued without a hearing and without giving her an opportunity to object. Taylor essentially contends that the issue to which she subsequently objected was not ripe on October 18th in order to require her to raise any objection. To the October 18, 2004 amended order we now turn.

 We are in accord with our intermediate appellate court colleagues that court orders are construed in the same manner as other written documents and contracts, *Md. Comm'n on Human Relations v. Downey Communications, Inc.,* 110 Md.App. 493, 518, 678 A.2d 55, 67 (1996), and if the language of the order is clear and unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used. *Hosain v. Malik,* 108 Md.App. 284, 310–11, 671 A.2d 988, 1001 (1996). Ambiguity exists, however, if "when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris v. Woods,* 353 Md. 425, 436, 727 A.2d 358, 363 (1999). *See also Cheek v. United Healthcare of Mid–Atlantic, Inc.,* 378 Md. 139, 162–63, 835 A.2d 656, 670 (2003). We have stated that "language can be regarded as ambiguous in two different respects: 1) it may be intrinsically unclear ...; or 2) its intrinsic meaning may be fairly clear, but its application to a

particular object or circumstance may be uncertain. Thus, a term which is unambiguous in one context may be ambiguous in another." *See Liverpool v. Balt. Diamond Exch., Inc.,* 369 Md. 304, 318, 799 A.2d 1264, 1272 (2002). If ambiguous, the court must discern its meaning by looking at the circumstances surrounding the order to shed light on the ambiguity, including the motion in response to which it was made. *See Carpenter Realty Corp. v. Imbesi,* 369 Md. 549, 561–62, 801 A.2d 1018, 1025 (2002); *Balducci v. Eberly,* 304 Md. 664, 670, 500 A.2d 1042, 1045 (1985).

The October 18, 2004 amended court order, with its three basic provisions, was submitted by Mandel and signed by the circuit court without a hearing. The first aspect of the court order was the appointment of Mandel as guardian ad litem. Although Mandel was not suggested by Taylor, she has not disputed his appointment as the guardian ad litem, because she requested the appointment.

The second aspect of the court order required Taylor to deposit $1,000.00 into her attorney's escrow account. Mandel argues that the order for Taylor to deposit $ 1,000.00 into her attorney's escrow account should have triggered an objection by Taylor, at which time she would have had to raise her statutory argument. In this regard, while "a voluntary act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review," *Franzen v. Dubinok,* 290 Md. 65, 69, 427 A.2d 1002, 1004 (1981), a party is not precluded from pursuing an appeal when he or she merely complies with a court order, because such action is not voluntary. *See Bd. of Physician Quality Assurance v. Levitsky,* 353 Md. 188, 199–200, 725 A.2d 1027, 1032 (1999); *Farmers' & Merchants' Nat'l Bank v. Harper,* 153 Md. 128, 132, 137 A. 702, 706 (1927). Thus, Taylor's deposit of the $1,000.00 into her attorney's escrow account pursuant to court order does not in and of itself preclude appellate review.

The $1,000.00 was to be held "subject to further Order of this Court regarding apportionment between the parties of

their respective obligations to pay the reasonable counsel fees of the attorney for the minor children," and the court "reserve[d] for future determination" the assessment of guardian ad litem fees. Mandel argues that these final provisions should have initiated Taylor's statutory objection to the assessment of guardian ad litem fees against her. The amended court order, in its ambiguity however, failed to define Taylor's liability, if any, at all. Apportion is defined as "to divide and share out according to a plan," Merriam–Webster's Collegiate Dictionary 61 (11th ed.2005), or to divide the "rights and liabilities between two or more persons or entities," Black's Law Dictionary 109 (8th ed.2004), but the amended order, however, contained no plan to divide the liability for the guardian ad litem fees. The order was silent as to the specific liability and stated only that the apportionment would occur in the future; pursuant to statute, the court could have determined that Taylor could not have been assessed guardian ad litem fees. Certainly, not until Taylor's liability was fixed would she have been required to object, which she did. Thus, she has preserved the issues involving assessment of guardian ad litem fees for appellate review.[11]

----

**11.** The preservation argument also implicates the doctrine of acquiescence on Taylor's part, i.e., whether her silence during the term of Mandel's work constitutes agreement to payment. We have opined that, " '[a]cquiescence ... has been described as a *quasi*-estoppel,' " *Alvey v. Alvey*, 220 Md. 571, 575, 155 A.2d 491, 493 (1959), quoting 3 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* 245 (5th ed.1941), so that to constitute acquiescence, the elements of estoppel must be present. *Id.* The elements of estoppel enunciated by Pomeroy are:

1. There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts.
2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him.
3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, *and at the time when it was acted upon by him.*
4. The conduct must be done with the intention, or at least with the *expectation,* that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. There are several familiar species in which it is

 Guardian ad litem fees may be assessed pursuant to statutory authority or express contractual provision. The statutory justification for the award of guardian ad litem fees against Taylor as the maternal grandmother, Mandel argues, can be found in Sections 1–202 and 12–103 of the Family Law Article, Maryland Code (1999, 2004 Repl.Vol.). It is well established that in conducting statutory interpretation, our primary goal is always "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Dep't of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 420, 918 A.2d 470, 482 (2007); *Gen. Motors Corp. v. Seay*, 388 Md. 341, 352, 879 A.2d 1049, 1055 (2005). We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " *Kelly*, 397 Md. at 419–20, 918 A.2d at 482; *Kane v. Bd. of Appeals of Prince George's County*, 390 Md. 145, 167, 887 A.2d 1060, 1073 (2005). Further, whenever possible, an interpretation should be given to the statutory provisions which does not lead to

---

simply *impossible* to ascribe any *intention* or even *expectation* to the party estopped that his conduct will be acted upon by the one who afterwards claims the benefit of the estoppel.

5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it.

6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

Pomeroy, *supra*, at 191–92 (emphasis in original).

Acquiescence, however, requires knowledge of liabilities, which, as we have discussed above, Taylor did not have. *See City of Bowie v. MIE, Props., Inc.*, 398 Md. 657, 697–99 & n. 28, 922 A.2d 509, 533–34 & n. 28 (2007) ("Acquiescence and waiver are always questions of fact. There can be neither without knowledge. The terms import this foundation for such action. One cannot waive or acquiesce in a wrong while ignorant that it has been committed. Current suspicion and rumor are not enough."); *Hunt v. Gontrum*, 80 Md. 64, 67–68, 30 A. 620, 621 (1894) (determining that beneficiary of trust did not acquiesce or consent to breach when he did not know the possible liability).

absurd consequences. *See Roskelly v. Lamone,* 396 Md. 27, 53, 912 A.2d 658, 673 (2006); *So. Easton Neighborhood Assoc. v. Town of Easton,* 387 Md. 468, 495, 876 A.2d 58, 74 (2005); *Smack v. Dep't of Health & Mental Hygiene,* 378 Md. 298, 305, 835 A.2d 1175, 1179 (2003) ("[T]he statute must be given a reasonable interpretation, 'not one that is illogical or incompatible with common sense.' "). If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. *Kelly,* 397 Md. at 419, 918 A.2d at 482; *City of Frederick v. Pickett,* 392 Md. 411, 427, 897 A.2d 228, 237 (2006); *Davis v. Slater,* 383 Md. 599, 604–05, 861 A.2d 78, 81 (2004). If, however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose. *Kelly,* 397 Md. at 419–20, 918 A.2d at 482; *Mayor and Town Council of Oakland v. Mayor and Town Council of Mountain Lake Park,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *Canaj, Inc. v. Baker & Division Phase III,* 391 Md. 374, 403, 893 A.2d 1067, 1084 (2006).

 The relevant portion of Section 1–202 of the Family Law Article, Maryland Code (1999, 2004 Repl.Vol.), states, [i]n an action in which custody, visitation rights, or the amount of support of a minor child is contested, the court may . . . *impose against either or both parents counsel fees.* (emphasis added). The term "parent" is not defined in Section 1–202 nor anywhere in Title 1 of the Family Law Article, although when the General Assembly has intended a specific definition of parent, it has provided such.[12] We have had the

---

12. *See, e.g.,* Md.Code (1999, 2006 Repl.Vol.), § 5–301(f) of the Family Law Article (defining parent as "an individual who, at the time a petition for guardianship is filed under this subtitle or at any time before a court terminates the individual's parental rights," is the father or the mother, but "does not include an individual whom a court has adjudicated not to be a father or mother of a child"); *id.* at § 5–3A–01 (e) (defining parent as "an individual who, at the time a petition for guardianship or adoption is filed under this subtitle or at any time before a court terminates the individual's parental rights," is the father

occasion, in another context in which the Legislature has not defined parent, to give it its ordinary meaning. In *In re Ramont K.*, 305 Md. 482, 505 A.2d 507 (1986), we addressed whether a grandmother was a "parent" within the meaning of Section 3–829 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1984 Repl.Vol.).[13] In that case, the grandmother of a young man was ordered to pay restitution after the grandson assaulted a victim The grandmother, who had raised the juvenile from his tender years, contested the restitution order on the basis that she was not his parent within the meaning of the statute. We agreed with the grandmother, holding that the "common, ordinary understand-

---

or the mother, but "does not include an individual whom a court has adjudicated not to be a father or mother"); *id.* at § 5–3B–01 (c) (defining parent as "an individual who, at any time before a court enters an order for adoption under this subtitle" is the father or the mother, but "does not include an individual whom a court has adjudicated not to be a father or mother"); Md.Code (1974, 2006 Repl.Vol.), § 3–801(t) of the Courts & Judicial Proceedings Article (parent "means a natural or adoptive parent whose parental rights have not been terminated"); Md.Code (1978, 2006 Repl.Vol.), § 8–412(a)(5) of the Education Article, as amended by 2007 Md. Laws, Chap. 456 (parent "does not include a social worker or other employee of a public agency who is responsible for the education or care of the child," but does mean a "child's natural parents," "adoptive parents," "guardian," "person acting as a parent of a child such as a relative or a stepparent with whom a child lives," "foster parent with whom a child lives if the foster parent has been granted limited guardianship for educational decision making purposes by the court that has placed the child in foster care," or "[a]ny other individual who is legally responsible for a child's welfare."); Md.Code (2000, 2005 Repl.Vol.), § 18–4A–01 of the Health–General Article (parent means a "natural or adoptive parent," "guardian," or "[a]ny other person who, under court order, is authorized to give consent").

13. Section 3–829 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1984 Repl.Vol.), as applied in *In re Ramont K.*, provided in relevant part:

(a) The court may enter a judgment of restitution against the parent of a child, or the child in any case in which the court finds a child has committed a delinquent act and during the commission of that delinquent act has:

(1) Stolen, damaged, or destroyed the property of another;

(2) Inflicted personal injury on another, requiring the injured person to incur medical, dental, hospital, or funeral expenses.

ing of the term 'parent' does not include a grandparent," and that "[w]here the General Assembly has desired to make one standing in loco parentis responsible it has known how to do so." *Id.* at 489, 505 A.2d at 511. The *In re Ramont K.* opinion noted on two prior occasions, *In re Arnold M.,* 298 Md. 515, 521, 471 A.2d 313, 316 (1984) ("We think it fully evident that the plain and popularly understood meaning of the term parent is . . . 'a father or a mother.' "), and *In re James D.,* 295 Md. 314, 327, 455 A.2d 966, 972 (1983) ("The term 'parent' is commonly understood to mean a father or a mother . . . ."), we had interpreted parent as a mother and father. *In re Ramont K.,* 305 Md. at 485–89, 505 A.2d at 509–11. Moreover, we iterated in *In re Ramont K.* that if this Court were to interpret the term "parent" in Section 3–829 to have included the grandparent, it "would constitute writing words into the statute," contrary to the rules of statutory interpretation. *Id.* at 489, 505 A.2d at 511.

Given that we presume that the Legislature has acted with full knowledge of prior and existing law, legislation and policy, *Kelly,* 397 Md. at 420, 918 A.2d at 482; *Oakland,* 392 Md. at 316, 896 A.2d at 1045; *Burch v. United Cable Television of Balt. Ltd. P'ship,* 391 Md. 687, 702, 895 A.2d 980, 988 (2006), it becomes evident that "parent" means only a mother or father against whom guardian ad litem fees can be assessed.

The legislative history surrounding Section 1–202 is also instructive. Contrary to Mandel's assertion, the term "parent" has been included in Section 1–202 since its inception. Section 1–202 was originally enacted as Section 3–604 of the Courts and Judicial Proceedings Article, which stated:

The court, for good cause, may appoint an attorney to represent a minor in any action brought under this subtitle in which the issue of custody, visitation rights, or the amount of support is contested and may levy counsel fees against *either or both parents* as is just and proper under all the circumstances. An attorney appointed to represent a minor may not represent any party to the action.

Maryland Code (1974, 1976 Supp.), Section 3–604 of the Courts & Judicial Proceedings Article, as enacted by 1976 Md. Laws, Chap. 250 (emphasis added). Section 3–604 was recodified in 1984 without substantive change as Section 1–202 of the Family Law Article. In 2006, Section 1–202 was amended in response to this Court's decision in *Fox v. Wills*, 390 Md. 620, 890 A.2d 726 (2006) (holding that attorney appointed to represent minor child as guardian ad litem was not entitled to immunity from legal malpractice action), "to restore the authority of the courts to appoint a best interest attorney who would provide an independent assessment of what is in the child's best interest. . . ." Department of Legislative Services, Fiscal and Policy Note, House Bill 700 (2006). That amendment did not, however, expand a court's authority to order payment of guardian ad litem fees against third parties even though third parry custody issues had had some notoriety prior to 2006.

Certainly, third party custody issues have been before this Court for many years. In *Ross v. Hoffman*, 280 Md. 172, 372 A.2d 582 (1977), we announced that the best interest of the child standard is always determinative in child custody disputes, and that when the dispute involves a third party, "it is presumed that the child's best interest is subserved by custody in the parent." *Id.* at 178–79, 372 A.2d at 587. Additionally, we concluded that the parental custody presumption can be overcome by showing that the parent is "unfit to have custody" or that there are such "exceptional circumstances as to make such custody detrimental to the best interest of the child." *Id.*

In 2003, we considered another third party custody issue in *Shurupoff v. Vockroth*, 372 Md. 639, 814 A.2d 543 (2003), and held that a clear and convincing evidence standard to show the best interest of the child is not constitutionally required nor appropriate in third party custody disputes. *Id.* at 660, 814 A.2d at 556. In response to *Shurupoff*, House Bill 1092 (2004) and Senate Bill 602 (2004) were filed, which would have allowed a third party to establish himself or herself as a "de facto custodian," defined as "an individual who has been the

primary caretaker and financial support of a child," and obtain the same standing in custody matters as a parent. House Bill 1092 (2004). Although the legislation did not become law, it clearly demonstrates that the General Assembly is cognizant of third party custody issues.

One of our recent cases, *McDermott v. Dougherty*, 385 Md. 320, 869 A.2d 751 (2005), involved an extensive discussion of third party custody and relied on *Shurupoff.* In *McDermott,* we concluded that the presumption in favor of parental custody is not overcome by a mere showing that the parent has sought assistance in raising the child or that the parent's work schedule requires him to leave the state for months at a time. *Id.* at 431, 869 A.2d at 816.

As a result, we agree with both the circuit court and the Court of Special Appeals and hold that the circuit court did not possess the authority to assess guardian ad litem fees against Taylor, the maternal grandmother of the children, under Section 1–202 of the Family Law Article because the use of the term "parent" only permits the court to assess the fees on a mother or a father.

■ Although the circuit court and the Court of Special Appeals disagreed, Mandel also continues to argue that the authority to assess guardian ad litem fees against Taylor exists pursuant to Section 12–103(a) of the Family Law Article, Maryland Code (1999, 2004 Repl.Vol.), which provides that

[t]he court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or

(2) files any form of proceeding:

(i) to recover arrearages of child support;

(ii) to enforce a decree of child support; or

(iii) to enforce a decree of custody or visitation.

Mandel asserts that we have sanctioned the award of guardian ad litem fees under Section 12–103 in *Carroll County Department of Social Services v. Edelmann*, 320 Md. at 150, 577 A.2d at 14. In that case, a mother filed a petition to terminate the father's parental rights. The Department of Social Services, which had intervened to recover unpaid child support as the mother's assignee, successfully petitioned the court to appoint a guardian ad litem for the minor child. After the case concluded, without conducting a hearing and without assigning any reasons, the trial court awarded the guardian ad litem's fees against DSS. This Court reversed. *Id.* at 177–78, 577 A.2d at 27. After quoting both Section 1–202 and Section 12–103 of the Family Law Article, we opined that "Section 12–103(b) requires the court, in exercising its discretion, to consider the financial status of the parties, the needs of the parties, and whether there was substantial justification for bringing or defending the proceeding." *Id.* at 177, 577 A.2d at 27. Noting that "[t]here is no indication in this record that the court considered any of those factors ... [,] without the benefit of a hearing and without any evidence as to [the father's] financial status," we remanded the case for the court to "determin[e] who shall pay [the guardian ad litem] fee." *Id.* Contrary to Mandel's argument, however, we did not hold that guardian ad litem fees could be assessed under the purview of Section 12–103(a). Instead, we held that whenever a court assesses guardian ad litem fees under Section 1–202, the court should consider various factors, such as those articulated in Section 12–103(b) of the Family Law Article.

Rather, we recently have held in *Goldberg v. Miller*, 371 Md. at 591, 810 A.2d at 947, that Section 12–103(a) *did not* encompass awards of guardian ad litem fees. In that case, a guardian ad litem who was awarded fees against the father sought to have his fees characterized as "in the nature of 'child support'" in order to be able to garnish the father's federal retirement benefits. *Id.* at 595, 810 A.2d at 949. We determined, however, that Section 12–103 pertained to "counsel fees," not guardian ad litem fees, and that because "counsel

fees" are for the benefit of the party and not the child, they could not be treated as child support:

Section 12–103(a) allows the court, at its discretion, to award counsel fees to "either party" of a domestic case where issues of child support, custody, or visitation are involved. Code, § 12–103(a) of the Family Law Article. Section 12–103(a), though, does not concern attorney's fees that a court may award to a guardian ad litem. *See Petrini [v. Petrini,* 336 Md. 453, 467–68, 648 A.2d 1016, 1022–23 (1994) ]. Rather, it refers to any counsel fees accrued by one *party* in applying for or defending a matter involving child support, child custody, or visitation. Code, § 12–103(a) of the Family Law Article. The party, therefore, rather than the child, receives the immediate benefit from an award under this section, unlike the expenses the Legislature addressed under Section 12–101(d)(ii), which governs medical support and neonatal expenses, and Section 12–102(b), which governs orders to required health insurance coverage for a child. Thus, courts may not treat an award under Section 12–103(a) as child support.

*Id.* at 606, 810 A.2d at 956 (emphasis in original). Therefore, Taylor is not liable for guardian ad litem fees under Section 12–103.

■■■ In the absence of statutory authority for the imposition of guardian ad litem fees against Taylor, Mandel alternatively argues that Taylor waived her right to challenge the guardian ad litem fees because she requested the appointment of the guardian ad litem and in fact deposited $1,000.00 into her attorney's escrow account. The circuit court and the Court of Special Appeals agreed with Mandel; we disagree.

■■■ We have defined waiver as the intentional relinquishment of a known right. *In re Blessen H.,* 392 Md. 684, 698, 898 A.2d 980, 988 (2006); *Myers v. Kayhoe,* 391 Md. 188, 205, 892 A.2d 520, 530 (2006). Waiver rests upon the intention of the party, *Gould v. Transamerican Assocs.,* 224 Md. 285, 295, 167 A.2d 905, 909 (1961), and therefore, acts relied upon as constituting waiver must unequivocally demonstrate that

waiver is intended. *Myers,* 391 Md. at 205, 892 A.2d at 530–31; *Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 109, 468 A.2d 91, 98 (1983). The right or advantage waived must be known; "[t]he general rule is that there can be no waiver unless the person against whom the waiver is claimed had full knowledge of his rights, and of facts which will enable him to take effectual action for the enforcement of such rights." *Armour Fertilizer Works v. Brown,* 185 Md. 273, 278–79, 44 A.2d 753, 755 (1945).

Mandel's argument, built on the premise that Taylor waived her right to object to the assessment of the guardian ad litem fees because she requested the guardian ad litem appointment and deposited $1,000.00 into her attorney's escrow account, relies upon *Van Schaik v. Van Schaik,* 90 Md.App. at 725, 603 A.2d at 908. *Van Schaik* was a divorce proceeding that concluded in a separation, custody and property settlement agreement. Thereafter, the trial court, sua sponte, appointed a guardian ad litem for the parties' minor child; the guardian ad litem subsequently moved for a psychological and orthodontic evaluation of the child. In response, the father *expressly* consented to the evaluations and the appointment of the guardian ad litem, as well as agreed that the costs of the evaluation and attorney fees should be determined by the court after a hearing in a responsive pleading: "Robert Van Schaik has no objection to the appointment of an attorney to represent the interests of the minor child and no objection to the procuring of an independent psychological evaluation.... That the costs of the matter related to the appointment of an attorney and any other costs related to psychological evaluation should be determined by the Court after a proper hearing." *Id.* at 732, 603 A.2d at 911–12. When the guardian ad litem moved to recover fees, the father objected. The issue before the Court of Special Appeals was only whether the court had the authority to order the payment of guardian ad litem fees where there were no contested issues of custody, visitation rights or child support, not waiver, because the father had expressly consented to the assessment of guardian ad litem fees. There is no express waiver in the present case.

The Court of Special Appeals, however, determined that Taylor had impliedly consented to the assessment of guardian ad litem fees against her. Implied consent, however, cannot be found on these facts. At the time Taylor requested the appointment of the guardian ad litem, there was no hearing regarding fees. The original order appointing Mandel as guardian ad litem did not contain any reference to fees, and the Amended Order Appointing Counsel for Minor Children reserved the determination of fees to a later date and stated that the $1,000.00 was to be held in escrow "subject to further Order o f this Court regarding apportionment between the parties *of their respective obligations* to pay the reasonable counsel fees of the attorney for the minor children." (emphasis added). Without apportionment of liability, however, Taylor could not be found to have impliedly consented to the assessment of fees.

Her deposit of $1,000.00 into her attorney's escrow account in compliance with a *court order*, moreover, was not voluntary relinquishment of a right, ergo waiver, as we noted in *Board of Physician Quality Assurance v. Levitsky,* 353 Md. at 188, 725 A.2d at 1027. In that case, the Board of Physician Quality Assurance restored Dr. Levitsky's license to practice medicine in order to conform with a circuit court order, prior to appealing the court's decision. We rejected Dr. Levitsky's argument that the Board had waived its right to challenge the order, noting that for the Board to have waived its right to appeal, it must have done so voluntarily. *Id.* at 199–200, 725 A.2d at 1032. Considering that the Board had no choice "but to act in conformance with the circuit court's order," we concluded that the Board's action was not voluntary or inconsistent with its position on appeal:

> There was no voluntary act here on the part of the Board inconsistent with its position that the circuit court erred in vacating its order. The Board filed a timely appeal to the Court of Special Appeals, sought a stay from the circuit court, and even petitioned for *certiorari* in this Court. When the stay was denied, the Board had no choice but to act in conformance with the circuit court's order; any further withholding of Dr. Levitsky's license would have

been patently unlawful and may have subjected the Board and its members to serious legal consequences.

*Id.* at 200, 725 A.2d at 1032. *See also Farmers' & Merchants' Nat'l Bank v. Harper,* 153 Md. at 132, 137 A. at 706 ("The question of waiver involves the idea of voluntary election, but there can be no question of waiver when the action taken, which is claimed to be a waiver, was done under compulsion. . . .").[14]

In conclusion, there is no statutory authority authorizing imposition of guardian ad litem fees against Taylor, the mater-

---

**14.** Many of our sister states have also articulated that compliance with a court order is not a waiver. *See Del Rio Land, Inc. v. Haumont,* 110 Ariz. 7, 514 P.2d 1003, 1006 (1973) (Del Rio Land Inc. complied with judgment ordering specific performance before appealing to set aside order; the Arizona Supreme Court held that "[t]he actions taken by the officers of the corporation were compelled by the necessities of the situation and must be regarded as compulsory rather than voluntary," so as to not constitute waiver); *Fortunato v. Superior Court,* 114 Cal.App.4th 475, 8 Cal.Rptr.3d 82, 86–87 (2003) (concluding that individual did not waive privilege against forced disclosure of tax returns by complying with court order because it was "not a voluntary relinquishment, and does not, therefore, effect a waiver of the privilege"); *Mendenhall v. Judy,* 671 N.W.2d 452, 459 (Iowa 2003) (following a bench trial, the court ordered daughter to make distributions from family business' stock to her two brothers; the brothers argued that after the daughter made the distributions, she waived her right to appeal, which the court rejected: "We view the payments here were made under compulsion of court order. According to the order, Marilyn's failure to make the payments would result in a sale of the company's assets."); *Wampler v. Dir. of Revenue,* 48 S.W.3d 32, 34–35 (Mo.2001) (en banc) (Director complied with court order to reinstate Wampler's driving privilege before appealing; the Supreme Court of Missouri stated that "complying with the court's order is not a voluntary act" such as to effectuate waiver because to not do so could subject the Director to "being held in contempt of court"); *Kassebaum v. Kassebaum,* 178 Neb. 812, 135 N.W.2d 704, 705 (1965) (remarking that because "contempt charges, as well as criminal action, could be brought for failure to make the child support payments required by an enforcible decree, . . . where no supersedeas bond is furnished, the payment of . . . a judgment for child support do[es] not deprive the payor of his right of appeal"); *Thomas v. Comm'rs of Carteret County,* 66 N.C. 522, 525 (1872) (noting that even though the court did not have the power to issue the petition for mandamus against a county court, the answer to a petition for mandamus did not waive the right to object to defects in the proceeding because the answer was "not voluntary, as

nal grandmother of the children, and she did not waive her objection to the guardian ad litem fees by requesting the guardian ad litem appointment or by depositing $1,000.00 into her attorney's escrow account. Thus, we reverse the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THAT PART OF THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY ALLOCATING GUARDIAN AD LITEM FEES AGAINST PETITIONER. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

BELL, C.J., RAKER, and CATHELL, JJ., Dissent.

RAKER, J., dissenting, joined by BELL, C.J., and CATHELL, J.

I would affirm the judgment of the Court of Special Appeals. The intermediate appellate court affirmed on the grounds that Taylor impliedly consented to the court's action.

Judge James Eyler, writing for the panel, in the unreported opinion below, stated as follows:

"Unquestionably, the court had subject matter jurisdiction to determine issues of custody and visitation, and it had personal jurisdiction over the parties and the children. The court had statutory authority to appoint counsel for the children and apportion fees, and while it did not have authority to award fees against appellant, appellant consented to apportionment of fees, between the parties, by the court.

Appellant requested the court to appoint a guardian ad litem/counsel. After the court entered an order reserving for future determination the appropriate apportionment of fees between the parties, appellant not only failed to object

under the order of the Court the defendants were obliged to answer or be in contempt").

but complied with the order by depositing $1,000 into an escrow account. Appellant impliedly consented to the apportionment of appellee's fees."

I agree.

Petitioner could have, and should have, asked the court to reconsider the order providing that each party advance to counsel of record the sum of $1,000 until further order apportioning counsel fees. The order was entered without a hearing and although petitioner paid the money pursuant to the court order, petitioner could not request the appointment of a guardian ad litem, pay the money, and then sit quietly, reap the benefits of the attorney, and then refuse to pay her fair share. She acquiesced and impliedly consented.

Chief Judge BELL and Judge CATHELL have authorized me to state that they join in this dissenting opinion.