**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———

**No. 14-2352**

———

JOHN R. KOLB, JR.,

        Plaintiff - Appellant,

    v.

ACRA CONTROL, LTD., d/b/a ACRA Control, Inc.; ACRA CONTROL,
INC., other ACRA U.S.A.,

        Defendants – Appellees,

    and

CURTISS-WRIGHT CONTROLS, INC.,

        Defendant.

———

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Paul W. Grimm, District Judge.  (8:12-
cv-02782-PWG)

———

Argued:  September 16, 2015      Decided:  November 20, 2015

———

Before KING, KEENAN, and FLOYD, Circuit Judges.

———

Affirmed by unpublished per curiam opinion.

———

**ARGUED**: Ian Andrew Cronogue, MURRAY, CRONOGUE & WERFEL, P.L.C.,
Alexandria, Virginia, for Appellant.  Howard Ross Feldman,
WHITEFORD, TAYLOR & PRESTON L.L.P., Baltimore, Maryland, for
Appellees.  **ON BRIEF**: Richard Murray, MURRAY, CRONOGUE & WERFEL,
P.L.C., Alexandria, Virginia, for Appellant.  Aaron L.

Casagrande, Christopher C. Jeffries, WHITEFORD, TAYLOR & PRESTON
L.L.P., Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises out of an employment arrangement between John R. Kolb (Kolb) and ACRA Control, Ltd. (ACRA Ireland). In 1999, ACRA Ireland hired Kolb as president of its new wholly-owned American subsidiary, ACRA Control, Inc. (ACRA USA). During employment negotiations, Kolb and ACRA Ireland agreed to a Performance Incentive Compensation Plan (PICP), under which Kolb would be granted options to purchase shares of ACRA Ireland if ACRA USA's sales met certain benchmarks. Although ACRA USA met those benchmarks in at least some years, Kolb never received any options under the PICP.

Kolb filed this action, alleging that ACRA Ireland breached the PICP by failing to issue him share options and that ACRA USA was unjustly enriched. The district court granted ACRA Ireland and ACRA USA's (collectively, the "ACRA entities") motion for summary judgment, finding that Kolb had waived his rights under the PICP. The district court also denied Kolb's motion to amend. For the reasons below, we affirm.

I.

On February 28, 1999, ACRA Ireland, an Irish corporation, formed ACRA USA, a Maryland corporation, as a wholly-owned subsidiary. Both corporations supply real-time data processing ground stations and airborne data acquisition and recording

3

systems to the aerospace industry. ACRA Ireland hired Kolb as president of ACRA USA. Kolb also served as ACRA USA's secretary and treasurer. Fergal Bonner, ACRA Ireland's managing director at the time, negotiated an employment agreement with Kolb. At the same time the parties entered into the initial employment agreement, they also executed the PICP.

Under the PICP, Kolb would receive options to purchase shares of ACRA Ireland if certain conditions were satisfied:

> [ACRA Ireland] agrees that when the average turnover (ATO) of [ACRA Ireland] due to US Sales, as defined, exceeds one million ($1,000,000) dollars, [Kolb] will be granted an option to purchase 2,159 ordinary shares of one (1) Irish pound each in [ACRA Ireland] at the option price defined in the paragraph below. For each successive increase of one ($1,000,000) Million in ATO as defined, [Kolb] will be granted an option to acquire an additional 2,159 ordinary shares of one (1) Irish pound each in [ACRA Ireland]. The maximum number of shares available to be granted to [Kolb] will be 10,795 ordinary shares of one (1) Irish pound each.

J.A. 420. The PICP defined ATO as "the total sales revenue of [ACRA Ireland] in the US, for the current fiscal year plus the previous fiscal year, divided by two (2) corresponding to the previous two fiscal years." J.A. 421. The share options were to be issued at a price of 10 Irish pounds per share. The PICP was to be "in effect and maintained for a minimum of five (5) years during the period of employment unless mutually agreed in writing." J.A. 420 (emphasis in the original).

4

ACRA Ireland did not calculate the ATO at any point during Kolb's employment. For the first five years of Kolb's employment, ACRA Ireland did not calculate the ATO because ACRA USA's revenue never reached $1 million. For the remainder of Kolb's employment, 2004 to 2011, ACRA Ireland did not calculate the ATO because it believed that the PICP only had a five-year term and had therefore expired in 2004. While the ATO for these years—-had it been calculated—-likely would have exceeded $1 million, ACRA Ireland never granted Kolb any share options under the PICP during his employment.

In addition to the PICP, Kolb and ACRA Ireland entered into two other share option agreements. In 2003, ACRA Ireland offered Kolb an option to buy 2,268 shares of ACRA Ireland for €31.96 per share.[1] The 2003 option agreement did not reference the PICP. Kolb purchased 100 shares under the 2003 option agreement. In October 2010, Curtiss-Wright Controls (UK) Ltd. (Curtiss-Wright UK) entered into negotiations with ACRA Ireland's shareholders to purchase all of the outstanding ACRA Ireland shares. In November 2010, ACRA Ireland offered Kolb an option to buy 2,168 shares of ACRA Ireland for €76.00 per share. Again, the 2010 option agreement did not reference the PICP.

---

[1] Between the execution of the PICP and the execution of the 2003 option agreement, Ireland switched its currency from the Irish pound to the euro. At the time of conversion, €1.00 was equivalent to about 0.79 Irish pounds.

Kolb purchased all 2,168 shares under the 2010 option agreement, conditioned on the completion of Curtiss-Wright UK's proposed purchase of all the outstanding ACRA Ireland shares. In his notice exercising the 2010 option, Kolb "confirm[ed] and acknowledge[d]" that apart from the 2,168 shares acquired by exercising the 2010 option and the 100 shares acquired by exercising the 2003 option, he had "no other rights or entitlements in respect of Shares." J.A. 574.

On July 28, 2011, Curtiss-Wright UK finalized its purchase of all the outstanding ACRA Ireland shares with the execution of the Share Purchase Agreement (SPA). The SPA was signed by Curtiss-Wright and ACRA Ireland's shareholders, including Kolb. The SPA, which is 103 pages, states:

> The Sellers[2] have agreed to sell and the Buyer has agreed to purchase the Shares on the terms and subject to the conditions of this Agreement.
>
> The Shares represent the entire issued share capital of the Company.

J.A. 449. The SPA and related documents contain several warranties and representations relevant to the current dispute.

The SPA provides that "each Seller shall irrevocably waive any claims against [ACRA Ireland or any subsidiary,] its agent, or employees which he/she may have outstanding at Completion."

---

[2] The SPA defines "Sellers" as the "legal and beneficial owners of the Shares," which includes Kolb. J.A. 449, 480.

J.A. 464. Schedule 4 to the SPA, which contains the sellers'
warranties, provides:

> The Shares comprise the whole of the allotted and
> issued share capital of [ACRA Ireland]. There are no
> shares issued or allotted in [ACRA Ireland or any
> subsidiary] which are not legally and beneficially
> owned by the Sellers, [ACRA Ireland] or a
> [subsidiary]. At Completion there is no agreement,
> arrangement or obligation in force which calls for the
> present or future allotment, issue or transfer of, or
> the grant to any person of the right (whether
> conditional or otherwise) to call for the allotment,
> issue or transfer of, any share or loan capital of
> [ACRA Ireland or any subsidiary] . . . .

J.A. 491. Schedule 4 also provides that neither ACRA Ireland
nor a subsidiary "has offered nor is proposing to introduce any
. . . share option/purchase or retention scheme for any employee
or other person" and that "[t]here are no claims in existence,
pending, or threatened against [ACRA Ireland or any subsidiary]
. . . by a current or former officer or employee in relation to
his terms and conditions of employment or appointment." J.A.
515–16.

Schedule 3 of the SPA requires a "letter in the Agreed Form
from each of the Sellers to [ACRA Ireland and its subsidiaries]
acknowledging that the Seller has no claim against the relevant
company other than for compensation in relation to wages and
salary due for the last month." J.A. 489. The same day the SPA
was executed, Kolb delivered the letter required by Schedule 3
to ACRA Ireland. The letter stated:

7

> I have no claim or right of action of any kind outstanding against [ACRA Ireland or any subsidiary] or any . . . officers or employees arising from my ownership of shares . . . or otherwise. To the extent that any such claim exists or may exist, I irrevocably waive such claim and release [ACRA Ireland and any subsidiary], its officers and employees from any liability in respect thereof.

J.A. 598.

Kolb admits that he forgot about the PICP sometime between when it was executed in 1999 and the execution of the SPA and related documents in 2011. Approximately one year after signing the SPA, Kolb filed this action for breach of contract against ACRA Ireland, arguing that ACRA Ireland breached the PICP by failing to issue share options despite sales meeting the requisite ATO.[3] A subsequent amended complaint added an unjust enrichment claim against ACRA USA. On May 16, 2014, the district court granted the ACRA entities' motion for summary judgment, finding that Kolb had waived his rights under the PICP by executing the SPA and related documents. Kolb filed a motion for reconsideration, which the district court denied. Kolb timely appealed.[4]

---

[3] Kolb's original complaint also asserted breach of contract claims against ACRA USA and Curtiss-Wright USA. The district court disposed of these claims on Curtiss-Wright USA's motion for summary judgment and ACRA USA's motion to dismiss. Kolb does not contest either ruling.

[4] Kolb also appeals the district court's denial of Kolb's second motion to amend, which sought to add a claim against ACRA (Continued)

8

We review a grant of summary judgment de novo. <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 958 (4th Cir. 1996). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Bostic v. Schaefer</u>, 760 F.3d 352, 370 (4th Cir. 2014) (citation and internal quotation marks omitted). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." <u>Libertarian Party of Va. v. Judd</u>, 718 F.3d 308, 313 (4th Cir. 2013) (citation and internal quotation marks omitted). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" <u>Id.</u> (citation and internal quotation marks omitted). "We are required to view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party . . . ." <u>Id.</u> at 312. In doing so, we must not weigh evidence or make credibility determinations. <u>Mercantile Peninsula Bank v. French</u>, 499 F.3d 345, 352 (4th Cir. 2007). "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary

---

Ireland under the Maryland Wage Payment and Collection Law, Md. Code Ann. Lab. & Empl. § 3-501 <u>et seq</u>.

9

judgment." Tolan v. Cotton, --- U.S. ----, 134 S. Ct. 1861, 1866 (2014) (per curiam).

III.

As an initial matter, we assume that the PICP was in effect for the entire period of Kolb's employment. See J.A. 420 ("The [PICP] will be in effect and maintained for a minimum of five (5) years during the period of employment unless mutually agreed in writing." (emphasis in original)); see also id. (providing that when the ATO was achieved, ACRA Ireland would grant Kolb share options "[n]ot later than ninety (90) days after the end of the fiscal year of [ACRA Ireland] and each subsequent fiscal year of [ACRA Ireland] ending during the period of employment" (emphasis added)). Moreover, it is undisputed that Kolb was never granted any share options under the PICP. The only question before us is whether the district court properly determined that Kolb waived any claims arising out of the PICP by executing the SPA and related documents.

IV.

A.

In considering the waiver issue, we must first determine whether to apply Maryland's or Ireland's waiver law.

10

Because jurisdiction is based on diversity, we apply the choice of law principles of the state in which the case was filed--here, Maryland.  Marks v. Scottsdale Ins. Co., 791 F.3d 448, 451 (4th Cir. 2015).  "When determining which law controls the enforceability and construction of a contract, [Maryland courts] apply lex loci contractus."  Lewis v. Waletzky, 31 A.3d 123, 129 n.8 (Md. 2011).  This principle instructs that "[i]n deciding questions of interpretation and validity of contract provisions, Maryland courts ordinarily should apply the law of the jurisdiction where the contract was made."  Allstate Ins. Co. v. Hart, 611 A.2d 100, 101 (Md. 1992).  Because the PICP was entered into in Maryland and this case involves the enforceability of the PICP, we apply Maryland law to determine whether Kolb has waived his rights under the PICP.[5]

B.

It is well-established under Maryland law that "'the parties [to a contract] by their conduct may waive the

_____

[5] The parties agree that Irish law governs the construction of the SPA and related documents.  See J.A. 478 ("[The SPA] and any dispute arising out of or in connection with it or its subject matter or formation . . . shall be governed by and construed in accordance with the laws of Ireland.").  In the district court, Kolb argued that the SPA and related documents, by their terms, did not waive rights arising out of the PICP.  However, he has not raised that argument here.  Therefore, as discussed below, matters of Irish law are only at issue to the extent Kolb argues that lack of privity precludes waiver.

11

requirements of [the] written contract.'" *Questar Homes of Avalon, LLC v. Pillar Constr., Inc.*, 882 A.2d 288, 294 (Md. 2005) (alteration in original) (quoting *Univ. Nat'l Bank v. Wolfe*, 369 A.2d 570, 576 (Md. 1977)). Waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." *Myers v. Kayhoe*, 892 A.2d 520, 530 (Md. 2006) (citations and internal quotation marks omitted). Because "[w]aiver rests upon the intention of the party, . . . acts relied upon as constituting waiver must unequivocally demonstrate that waiver is intended." *Taylor v. Mandel*, 935 A.2d 671, 686 (Md. 2007) (citations omitted).

### C.

Kolb argues that he has not waived his rights under the PICP for three reasons: (1) he did not have full knowledge of his rights; (2) he could not unilaterally waive his rights; and (3) ACRA Ireland cannot enforce the SPA since it was not a party to the SPA. We consider each argument in turn.

### 1.

Kolb first contends that he did not waive his rights under the PICP because he did not have full knowledge of those rights.

12

Maryland courts have defined waiver as "the intentional relinquishment of a <u>known</u> right." <u>Taylor</u>, 935 A.2d at 686 (emphasis added). "The right or advantage waived must be known; [t]he general rule is that there can be no waiver unless the person against whom the waiver is claimed had full knowledge of his rights, and of facts which will enable him to take effectual action for the enforcement of such rights." <u>Id.</u> at 687 (alteration in original) (citations and internal quotation marks omitted).

The Maryland Court of Appeals has apparently not considered whether constructive knowledge is sufficient to satisfy waiver's knowledge requirement. Where state law is unclear, federal courts must predict the decision of the state's highest court. See <u>Wells v. Liddy</u>, 186 F.3d 505, 527-28 (4th Cir. 1999).

In several states, courts have determined that the knowledge required for waiver can be either actual or constructive knowledge.[6] These states align with <u>Williston on Contracts</u>, a treatise frequently cited by the Maryland Court of

---

[6] <u>See, e.g.</u>, <u>Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank</u>, 703 F.2d 1361, 1369 (11th Cir. 1983) (applying Alabama law); <u>Richardson v. Wells Fargo Bank, N.A.</u>, 873 F. Supp. 2d 800, 810 (N.D. Tex. 2012) (applying Texas law); <u>Winans v. Weber</u>, 979 So. 2d 269, 274 (Fla. Dist. Ct. App. 2007); <u>Lyons ex rel. Lawing v. Holder</u>, 163 P.3d 343, 349 (Kan. Ct. App. 2007); <u>In re Guardianship of Florence T.O.</u>, 744 N.W.2d 915, 919 (Wis. Ct. App. 2007).

13

Appeals.[7]  See 13 Richard A. Lord, Williston on Contracts § 39:22 (4th ed. 1990)(hereinafter Williston).  Williston notes that "[i]t is also essential to the existence of a waiver of a right to performance under a contract that the party charged with the waiver have actual or constructive knowledge of the right or privilege allegedly waived."  Id.  Williston continues:

> [T]he party who has allegedly waived its rights is presumed to know those things (including matters concerning the other party's performance or failure to perform) which reasonable diligence on its part would bring to its attention.  Thus, the party charged with waiver may not plead willful ignorance and escape the waiver; rather, a waiver made with knowledge of facts which would put an ordinary person on inquiry is sufficient.

Id.; see also 28 Am. Jur. 2d Estoppel and Waiver § 188 ("It must generally be shown by the party claiming a waiver that the person against whom the waiver is asserted had, at the time, knowledge, actual or constructive, of the existence of the party's rights or of all material facts upon which they depended.").

Based on the foregoing authority, we predict that the Maryland Court of Appeals would hold that constructive knowledge of a right—-that is, "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by

---

[7]  Notably, the Maryland Court of Appeals has quoted Williston with approval while discussing waiver.  See Canaras v. Lift Truck Servs., Inc., 322 A.2d 866, 879 (Md. 1974).

14

law to a given person," Black's Law Dictionary (10th ed. 2014) (defining "constructive knowledge")--is sufficient to waive that right.

Kolb asserts that because ACRA Ireland did not calculate the ATO or grant him options to purchase shares when the ATO was achieved, he did not have knowledge of his rights under the PICP. Regardless of whether Kolb had actual knowledge of his rights under the PICP, we find as a matter of law that he had constructive knowledge of those rights. First, Kolb was well-acquainted with the PICP and its terms. Kolb and ACRA Ireland signed the PICP only after "extensive negotiations." J.A. 1022. Kolb considered the PICP "a critical, if not decisive, factor" in his choice to leave his higher paying job and become president of ACRA USA. J.A. 351; see also J.A. 2264 (Kolb testifying that the ability to gain ownership in ACRA Ireland was a key component of his compensation package). Moreover, Kolb indicated that, as president of ACRA USA, he was "generally" aware of the company's sales at all times and that, in any given year, he had all the information required to calculate the ATO available to him. J.A. 1121, 1200-01. He further acknowledged that the ATO was a simple calculation that he could have calculated if he had wanted to. J.A. 1199-1201.

Reasonable diligence on Kolb's part would have alerted him that ACRA USA's revenues triggered his rights to share options

15

under the PICP. That is, Kolb had full knowledge of "facts which [would] enable him to take effectual action for the enforcement of such rights." Taylor, 935 A.2d at 687 (citation and internal quotation marks omitted). Accepting Kolb's contention that he had no knowledge of his rights under the PICP would permit Kolb to "escape the waiver" by "plead[ing] willful ignorance." 13 Williston § 39:22. Because Kolb had constructive knowledge of his rights under the PICP, he could waive those rights.

2.

Next, Kolb argues that he could not have unilaterally waived his rights under the PICP because the provision at issue was for the mutual benefit of both himself and ACRA Ireland.

Under Maryland law, "[e]ither party to a contract may waive any of the provisions made for his benefit." Cattail Assocs., Inc. v. Sass, 907 A.2d 828, 843 (Md. Ct. Spec. App. 2006) (citation and internal quotation marks omitted). However, "[a]lthough a party may waive a provision included in a contract for that party's sole benefit, a party cannot waive a contractual requirement that benefits both sides to the transaction." Id. (citation and internal quotation marks omitted).

16

Kolb contends that the PICP provision at issue—-which gives him the option to buy shares of ACRA Ireland for 10 Irish pounds per share—-also benefits ACRA Ireland because it would receive monetary compensation for each option exercised. However, the rule that a contractual provision—-typically a condition precedent—-benefiting both parties cannot be unilaterally waived is intended to protect the nonwaiving party. 13 Williston § 39:24 ("[A] waiver of contract requirements and conditions may not be made unilaterally when it would deprive the nonwaiving party of a benefit under the provision in question."). Here, ACRA Ireland, the nonwaiving party, does not contend that the provision granting Kolb share options was made for its benefit. In fact, it explicitly argues that the provision was for Kolb's exclusive benefit.

Kolb's argument that his waiver is not enforceable because ACRA Ireland would have benefited from his exercise of the share options turns ACRA Ireland's shield into his own sword by using the rule to avoid an otherwise valid waiver. Such a result is contrary to the law of waiver. See 13 Williston § 39:15 ("[O]nce it has been established that a right has been waived, the party possessing the right prior to the waiver is generally precluded from asserting it in a court of law."). Kolb has not cited, and we have not found, any case in which a party who waived a contractual provision was later able to circumvent that

17

waiver by asserting that the provision was actually for the benefit of both parties. We will not allow Kolb to do so here.

3.

Finally, Kolb argues that ACRA Ireland and ACRA USA may not enforce the waivers contained in the SPA and related documents because they were not parties to the SPA.

Kolb bases this contention on his Irish law expert's opinion that under Irish law, "'no stranger to the consideration can take advantage of a contract, although made for his benefit.'"[8] J.A. 1451. The ACRA entities' Irish law expert agrees to an extent, opining that "the doctrine of privity of contract would ordinarily prevent a non-party to the contract from taking legal proceedings to affirmatively <u>enforce</u> that contract against one of the parties to it" under Irish law. J.A. 1985. However, the ACRA entities' expert opines that lack of privity would not preclude ACRA from raising Kolb's waivers in the SPA and related documents as an affirmative defense.

---

[8] Kolb's expert cites the Irish case of <u>Murphy v. Bower</u>, [1868] 2 IR 506 (Ct. Com. Pl. 1866) (Ir.), as the source of this quotation. However, the quotation does not appear in <u>Murphy</u>. The quotation does appear in <u>Tweedle v. Atkinson</u>, (1861) 121 Eng. Rep. 762, 764, 1 B&S 393, 398 (Eng.), an English case also cited by Kolb's expert in the same discussion. Both experts agree that Irish courts consider English law persuasive authority.

18

We agree.  Murphy v. Bower, [1868] 2 IR  506 (Ct. Com. Pl. 1866) (Ir.), which Kolb's expert acknowledges is "[o]ne of the most important Irish cases on the law of privity of contract," J.A. 1451, held that "where the foundation of the right of action is rested upon contract, no one can maintain an action who is not a party to the contract."  Murphy, 2 IR at 512 (emphasis added).  Here, ACRA is not attempting to maintain a right of action against Kolb based on the SPA and related documents, but rather is using Kolb's waiver as an affirmative defense.

Kolb cannot use privity of contract principles to escape the consequences of his waiver.  Kolb could have waived his rights under the PICP in any number of ways.  See BarGale Indus., Inc. v. Robert Realty Co., 343 A.2d 529, 533 (Md. 1975) (under Maryland law, "[a] waiver may be either verbal or in writing; and it is not necessary that the waiver should be direct and positive.  It may result from implication and usage, or from any understanding between the parties which is of a character to satisfy the mind that a waiver is intended." (citations and internal quotation marks omitted)).  The fact that Kolb's waiver happened to be in a contract with a third party governed by Irish law is inconsequential.  Once Kolb waived his rights under the PICP, those rights were extinguished as a matter of law.  See 13 Williston § 39:15.  Kolb cannot

19

circumvent an otherwise-valid waiver simply because ACRA Ireland and ACRA USA were not parties to the contract containing the waiver. Lack of privity does not prevent ACRA from asserting the affirmative defense of waiver.

V.

The Maryland Court of Appeals has noted that "[g]iven the highly factual nature of the waiver inquiry, it is an uncommon case in which the issue can be resolved by summary judgment." Hovnanian Land Inv. Grp. v. Annapolis Towne Ctr. at Parole, LLC, 25 A.3d 967, 984 (Md. 2011). "Occasionally, however, the waiver is so obvious that a ruling can be made as a matter of law." Id. (describing the cases where summary judgment is appropriate as an "unusual category").

This is such a case. Kolb waived his rights under the PICP in a number of ways. First, and as relied on by the district court, by signing the SPA Kolb "irrevocably waive[d] any claims against [ACRA Ireland or any subsidiary,] its agent, or employees which he . . . may have outstanding at Completion." J.A. 464. Moreover, in the SPA, Kolb warranted that there was "no agreement, arrangement or obligation in force which calls for the present or future allotment, issue or transfer of, or the grant to any person of the right . . . to call for the allotment, issue or transfer of, any share . . . of [ACRA

20

Ireland or any subsidiary] . . . ." J.A. 491. Kolb also warranted that neither ACRA Ireland nor a subsidiary "has offered nor is proposing to introduce any . . . share option/purchase or retention scheme for any employee or other person." J.A. 515.

Second, in the letter required by Schedule 3 of the SPA, which Kolb delivered to ACRA Ireland, he stated that he had "no claim or right of action of any kind outstanding against [ACRA Ireland or any subsidiary]" and to the extent that any such claim existed or may exist, he "irrevocably waiv[ed] such claim." J.A. 598.

Third and finally, in his notice exercising the 2010 option, Kolb "confirm[ed] and acknowledge[d]" that apart from the shares acquired by exercising the 2003 and 2010 options, he had "no other rights or entitlements in respect of Shares." J.A. 574.

The SPA and related documents clearly show that Kolb unequivocally waived any rights he had against the ACRA entities, including any rights arising under the PICP. Therefore, the district court properly granted summary judgment in favor of ACRA Ireland and ACRA USA.[9]

_____

[9] Because Kolb waived any claims against ACRA Ireland and ACRA USA, the district court properly denied Kolb's second motion to amend his complaint. See Steinburg v. Chesterfield (Continued)

21

VI.

For the foregoing reasons, we affirm the district court.

<u>AFFIRMED</u>

---

Cnty. Planning Comm'n, 527 F.3d 377, 390 (4th Cir. 2008) (holding that a district court does not abuse its discretion in denying a motion to amend where the amendment would have been futile).